**NORTHFIELD INSURANCE COMPANY, Plaintiff,**

v.

**Bruce BARLOW, and Loida Barlow, individually, Defendants.**

**No. 3:96CV379/LAC.**

United States District Court,
N.D. Florida,
Pensacola Division.

. Sept. 30, 1997.

---

Andrew P. Rock, W. Lane Neilson, Neilson & Associates, Orlando, FL, for Plaintiff.

John W. Merting, John W. Merting PA, Pensacola, FL, for Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

COLLIER, District Judge.

Pending before the Court is Plaintiff's motion for summary judgment (doc. 28) which Defendants oppose on several grounds, including the existence of genuine issues of material fact and failure of Plaintiff's agents to comply with the Florida Insurance Code (doc. 36). Pursuant to the Court's orders extending discovery (doc. 126) and granting Plaintiff's motion for an emergency ruling on summary judgment (doc. 127), the parties have completed discovery and the Court now finds Plaintiff's motion for summary judgment (doc. 28) ripe for resolution. For the reasons stated below, Plaintiff's motion is GRANTED.

### I. BACKGROUND

After a review of the record, the Court accepts the following facts as true for the purposes of deciding this motion.

On June 7, 1995 John Michel of Universal Brokers Exchange, Ltd., on behalf of Ed Wilson of Americas Marine & Casualty, Inc. and Defendants Bruce and Loida Barlow ("the Barlows"), submitted application materials (doc. 1, Ex. A) to Atlantic Marine Insurance Company, an agent of Plaintiff Northfield Insurance Company ("Northfield"), for a marine insurance premium quote, binder, and policy of insurance. Subsequently, Atlantic provided the Barlows with a premium quotation, binder, and insurance policy for their fifty-eight foot water craft, the JOSS ADVENTURER.

Only two months later, on August 3, 1995, the JOSS ADVENTURER sustained significant damage in Pensacola Bay as a result of Hurricane Erin. The Barlows submitted their claim to Northfield, who, pursuant to the policy at issue, paid $120,282.30 both to the Barlows personally as well as for direct repairs to the vessel. However, further investigation by Northfield into the Barlow's claim revealed misrepresentations and concealment of fact in the Barlows' application for insur-ance, prompting Northfield to cease any additional payment on the claim.

Based on these misrepresentations and concealment, Plaintiff filed suit invoking both maritime and diversity jurisdiction in this Court on July 30, 1996 (doc. 1). Plaintiff seeks to have the Court declare that the binder and insurance policy are void ab initio, absolving Northfield from making any further payments under the policy. Additionally, Northfield seeks restitution for all payments already made on the Barlows' claim as well as costs, attorneys and expert witness' fees, and punitive damages. Contemporaneously with their answer filed August 19, 1996, the Barlows filed a counterclaim seeking attorney's fees, costs, and prejudgment interest (doc. 7).

On December 16, 1996, Plaintiff Northfield filed this motion for summary judgment (doc. 28). Discovery was completed on July 22, 1997, and the Court now considers the motion before it.

### II. MOTION FOR SUMMARY JUDGMENT

#### A. Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). What facts are "material" is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In ruling on a summary judgment, courts must resolve all reasonable doubts regarding the facts and draw all justifiable inferences therefrom in favor of the non-moving party. *Id.* at 255, 106 S.Ct. at 2513–14; *U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991) (en banc).

The party moving for summary judgment bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida-

vits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1976); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate there is a genuine issue of material fact precluding summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160–61, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). If the moving party fails to meet this initial burden, then it is not entitled to summary judgment and no defense to the motion is required. *Adickes,* 398 U.S. at 161, 90 S.Ct. at 1610.

Where the *moving* party bears the burden of proof at trial, that party can only meet its burden on summary judgment by coming forward with positive evidence demonstrating there is an absence of a genuine issue of material fact. *Fitzpatrick,* 2 F.3d at 1115. Stated differently, the moving party must "support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial." *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2556 (Brennan, J., dissenting); *Four Parcels,* 941 F.2d at 1438. If the moving party makes such a showing, then the burden shifts to the non-moving party to produce "significant, probative evidence" demonstrating a triable issue of fact. *Four Parcels,* 941 F.2d at 1438

### B. Analysis

#### Conflicts of Law

Because Plaintiff basis his suit in both maritime and diversity jurisdiction,[1] the Court must first determine the source of law to apply.[2] In evaluating maritime insurance contracts, the Circuits have expressed diverse views regarding choice of law. *See ABB Power T & D Co., Inc. v. Gothaer Versicherungsbank VVAG,* 939 F.Supp. 1568 (S.D.Fla.1996) (discussing the different

choice of laws between the Eleventh and Fifth Circuits). The Supreme Court in *Wilburn Boat* noted the importance of state law in governing maritime disputes; however, it carved out an exception to the state law application where federal admiralty law was "firmly entrenched." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 315–21, 75 S.Ct. 368, 371–74, 99 L.Ed. 337 (1955). Subsequently, in *Kilpatrick Marine Piling v. Fireman's Fund Insurance,* the Eleventh Circuit interpreted *Wilburn Boat* to apply state law where no federal admiralty law existed. *Kilpatrick,* 795 F.2d 940, 948 (11th Cir.1986).

■ Plaintiff Northfield asserts its maritime claim under the doctrine of *uberrima fidei,* a concept long recognized in admiralty law. *McLanahan v. Universal Insurance Co.,* 26 U.S. 170, 1 Pet. 170, 7 L.Ed. 98 (1828). *Uberrima fidei,* requiring parties to a maritime contract to deal in utmost good faith and full disclosure, has been accepted in the Eleventh Circuit as firmly entrenched precedent, controlling even in the face of contrary state authority. *Steelmet, Inc. v. Caribe Towing Corp.,* 747 F.2d 689, 695 (11th Cir.1984), *reh'g granted on other grounds,* 779 F.2d 1485 (11th Cir.1986). *See also, D.J. McDuffie, Inc. v. Old Reliable Fire Ins.,* 608 F.2d 145 (5th Cir.1979). State law will control only where the parties to a marine contract agree in the policy or contract to its application. *King v. Allstate Ins. Co.,* 906 F.2d 1537, 1541 (11th Cir.1990) ("There being no public policy problem whatsoever in parties to a marine insurance contract setting the terms of the policy between them, we uphold their freedom to do so.").

■ In the instant case the parties did not contract around the principles of *uberrima fidei.* The pertinent clause of the insurance application states:

---

1. The latter normally requiring application of Florida insurance law where the interpretation of an insurance contract is at issue. *Fernandez v. Bankers Nat. Life Ins. Co.,* 906 F.2d 559 (11th Cir.1990).

2. Plaintiff Northfield states in its motion for summary judgment that Florida law controls where an insurance contract dispute is brought in federal court under diversity jurisdiction (doc. 29:2–3). Although Defendant agrees (doc. 36:4), both parties are limiting their analysis to non-maritime insurance. As discussed *infra,* where federal admiralty law is firmly entrenched, maritime insurance suits invoke a choice of laws analysis separate and distinct from other types of insurance disputes.

2. Any misrepresentations in this application for insurance, will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.

(doc. 1, Ex. C).

Additionally, the insurance policy issued to the Barlows contains a similar clause:

1) This policy shall be void:-

i) In the case of fraud on the part of any insured under this policy,

ii) If at any time any insured conceals or misrepresents any material fact concerning this insurance, the property insured, the insured's interest in the property, the nature of the risk insured or the circumstances of a claim....

(doc. 1, Ex. F, ¶ 13).

■ The doctrine of *uberrima fidei* requires that the parties to a marine contract exercise the highest degree of good faith and fully disclose all facts material to the risk. The Supreme Court, embracing the doctrine, detailed its requirements:

The underwriter must be presumed to act upon the belief, that the party procuring insurance, is not, at the time, in possession of any facts, material to the risk, which he does not disclose; and that no known loss has occurred, which, by reasonable diligence, might have been communicated to him. If a party having secret information of a loss, procures insurance, without disclosing it, it is a manifest fraud, which avoids the policy.

*McLanahan*, 26 U.S. at 185, 1 Pet. at 185. In comparing the application and policy clauses above with the doctrine of *uberrima fidei*, it is apparent that those clauses only serve to reinforce the principles of the doctrine rather than preempt them. There is no language, express or implied, in the policy which indicates an intent to contract around the obligations of *uberrima fidei*. For these reasons, it is appropriate for the Court to apply federal maritime law.

### Uberrima Fidei

■ The doctrine of *uberrima fidei* places a strict burden on the insured to disclose all material facts. The standard for what information qualifies as material is very broad, and in the case of marine insurance a fact is material if it might have a bearing on the risk to be assumed by the insurer:

Nothing is better established in the law of marine insurance than that 'a mistake or commission material to a marine risk, whether it be willful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy. And the same rule obtains, even though the insured did not suppose the fact to be material.' ... 'Concealment,' in the law of marine insurance, is the failure to disclose any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk or obligation assumed, and which is, in fact or law, within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge. In the case of marine insurance, the insured must disclose all facts material to the risk, and in default of such duty the contract may be avoided by the insurer.... It has been said that the insured is bound to communicate every material fact within his knowledge not known or presumed to be known to the underwriter, whether inquired for or not; and that a failure in either particular, although it may arise from mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void, for the reason that the risk assumed is not the one intended to be assumed by the parties.

*Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974, 980–81 (5th Cir.1969) (citations omitted). This heavy burden placed on marine insurance applicants exists to protect the underwriter, who often has no practicable means of verifying the accuracy or sufficiency of facts supplied by the applicant. *Steelmet*, 747 F.2d at 695 (quoting G. Gilmore & C. Black, LAW OF ADMIRALTY 62 (2d ed.1975)).

### Misrepresentations

■ In the case at bar, Plaintiff Northfield relies on nine alleged misrepresentations in the insurance application which would void the policy *ab initio*. Any one of these asser-

tions, if shown to (a) be made by the Barlows on the application (regardless of intent) and (b) have a bearing on the risk to be assumed by Northfield (materiality), will be sufficient to find the policy void *ab initio*. Indeed, even if the materiality or existence of one or more of Northfield's assertions remains a genuine issue of material fact, summary judgment for Plaintiff Northfield will not be precluded, as only one "misrepresentation" need violate the good faith requirement of *uberrima fidei* to void the policy. *See Kilpatrick*, 795 F.2d at 942.

### (1) Experience as a Naval Commander

Defendant Bruce Barlow stated in his resume ("Resume") accompanying the insurance application that he served as a Navy Commander operating Naval vessels (doc. 31, Ex. A:3). In fact, Mr. Barlow was never a Navy Commander, but rather served as a Private First Class in the Army, from which he was dishonorably discharged on February 23, 1950 (doc. 31, Ex. I; doc. 51, Ex. S:97–99). Furthermore, in his examination under oath, Mr. Barlow stated that he never had any training as a military officer (doc. 51, Ex. S:97).

### (2) Training as a Certified Navigator

In his Resume, Mr. Barlow also stated that he was a Certified Navigator. However, in his examination under oath he responded that he really had no idea what a Certified Navigator was, and in any event, was not a government Certified Navigator (doc. 51, Ex. S:203–05). When questioned about the training to become a Certified Navigator, Mr. Barlow could not answer beyond mere speculation as to what it might be (*id.*).

### (3) Qualifications to Operate a Vessel

Mr. Barlow stated in his Resume that he was qualified to "operate any vessels motor or sail worldwide." However, Mr. Barlow admitted when deposed that he had only owned a small sailboat (twenty-two feet) and a few small motor boats (*id.* at 124).

### (4) Application for an Unlimited License

Additionally, Mr. Barlow stated in his Resume that he is "applying and now working on unlimit license for all water craft." Again at his examination under oath, Mr. Barlow revealed that he had never applied for an "unlimit" (unlimited) license, but rather had only "thought about it" and "talked about it" (*id.* at 208–10).

### (5) Master in Any Kind of Weather

In Defendant Loida Barlow's April 9, 1995 letter accompanying the insurance application, Mrs. Barlow stated that she could "master in any kind of weather" (doc. 31, Ex. A:4). However, upon questioning at her examination under oath, Mrs. Barlow responded that she had been on vessels twice in bad weather (doc. 51, Ex. U:122–23). In the first instance, Mrs. Barlow was on a boat in the Caribbean. Although she was not in control of the vessel herself, she maintained that she was "right there" (*Id.*). The second time, she was in control of a vessel outside of Panama City in a "not very bad storm" where the waves were only six to eight feet (*id.*).

### (6) Driver's License and Driving History

When asked for a driver's license number on the insurance application, Mr. Barlow provided only a Louisiana license and reported no auto violations or suspensions in the past five years (doc. 31, Ex. A:22). However, during his examination under oath, Mr. Barlow admitted that the last time he lived in Louisiana was sometime between 1978 and 1980 (doc. 51, Ex. S:132). In fact, Mr. Barlow had a Florida license since March 1982 and had received a thirty-day suspension in 1994 for numerous traffic violations (doc. 31, Ex. K).

### (7) Captain's License Pending

In the Voyage Questionnaire included with the insurance application, both defendants are listed as Skipper/Captain (doc. 31, Ex. A:14). The Barlows also listed "Captain License Pending" at the bottom of the entry (*id.*). However, upon questioning under oath, Mrs. Barlow revealed that she did not have a captain's license and that she had not applied for one (doc. 51, Ex. U:96–97). Her only affirmative action towards obtaining a license was to attend school in preparation for the exam, school which she only began

some six months after making the statement on the insurance application (*id.*).

### (8) Permanently Disabled

In the "Vessel Owners Application" included with the insurance application materials, the Barlows state under "Occupation" that Mr. Barlow is retired and reference the attached Resume, which states nothing further regarding this subject (doc. 31, Ex. A:21; Ex. A:3). However, while under oath at his examination, Mr. Barlow stated that he had been in and out of hospitals at least once a year for the last twenty years (doc. 51, Ex. T:127) and that he is totally and permanently disabled with chronic head and back pain (doc. 51, Ex. S:335–36).

### (9) Marine Loss History

Also in response to a question in the Vessel Owners Application, Defendants replied that they were not involved in any marine loss in the last ten years (doc. 31, Ex. A:22). However, at his examination under oath, Mr. Barlow stated that in several instances he had contacted his insurers regarding claims for damage to the Joss Adventurer, including a pending claim of $58,000 (doc. 51, Ex. T:136, 140, 142–43, 146, 150, 153).

Defendants, in their memorandum in opposition to summary judgment (doc. 36) only contest assertions (6), (8), and (9) made by Plaintiff Northfield above.[3] In his affidavit, Mr. Barlow asserts that he informed Americas Marine & Casualty of his driving history and the Florida license (*id.*, Ex. B:5). Furthermore, Mr. Barlow states that he was never asked about his medical history nor were there questions regarding his health on the application (*id.*). Mr. Barlow also maintains that he responded negatively to the prior insurance claims inquiry at the instruction of Ed Wilson, the employee of Americas

Marine & Casualty who handled the application (*id.*).

Viewing the facts in the light most favorable to the non-moving party, the Court must assume the Barlows made these statements to Americas Marine & Casualty and that they were truthful. However, even assuming these facts and that such disclosure satisfies the stringent disclosure requirements of *uberrima fidei*, there still remain six other misrepresentations which the Barlows do not contest. Therefore, the Court finds that Plaintiff Northfield's assertions numbered (1) through (5) and (7) above were in fact misrepresentations and/or concealment made by the Barlows in completing their insurance application packet.

### Materiality

■ The second step of analysis is to determine whether any of the misrepresentations made by the Barlows are material in that they would have had a bearing on the assumption of risk undertaken by Northfield. In proving materiality, Northfield provides the affidavit of Michael Hodnett, president of Atlantic Marine Insurance Services, an agent of Northfield (doc. 3). In that affidavit, Hodnett states that he would not have issued either the premium quote, binder, or policy had he known about the misrepresentations made regarding Mr. Barlow's status as a Navy Commander, licensed captain, or inexperienced sailor (doc. 3, ¶¶ 10–12, 16, 18). He states that the misrepresentations were either material to the acceptance of the risk, or to the hazard assumed by the insurer, Northfield (doc. 3, ¶ 18).

■ Arguing that the above misrepresentations and omissions were not material to the policy's issuance, the Barlows, in their memorandum in response to this Court's or-

---

**3.** Defendants failed to file a statement of material facts as required by the Court's Initial Scheduling Order (doc. 11) under Local Rule 56.1(A) which states:

> The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue of fact to be tried....

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party.

N.D. Fla. Loc. R. 56.1(A). As a result, assertions made in Plaintiff Northfield's statement of material facts (doc. 31) should be deemed admitted under the rule. However, the Court will consider the limited factual statements made in Defendants' memorandum in opposition to summary judgment (doc. 36).

der of June 12, 1997 (doc. 127), stated that of 333 insurance applications approved by Atlantic Marine & Casualty (83 files) and Northfield (250 files), 22 of Atlantic's and 70 of Northfield's contained some form of omission or deviation from the "routine" application (doc. 128:5–8).[4] Of these, 25 omitted driver's license numbers, 57 did not respond to prior driving history, 18 failed to specify prior losses or claims, 12 noted prior speeding·tickets, 12 noted non-renewals or cancellations of insurance policies, 39 either failed to respond or showed limited previous boat ownership/experience, and 25 indicated that the vessel sought to be insured did not have navigational equipment complying with the specific requirements of Northfield (*id.*).

In considering this data the Court must view the evidence in the light most favorable to the non-moving party. Even assuming that what the Barlows have noted in these applications are omissions of pertinent facts, they are simply not indicative of the materiality of the misrepresentations made in their own application. The fact that Northfield has chosen not to investigate the validity of the submissions made on the other applications does not invalidate its reliance on the misrepresentations made in the Barlows'.

▮▮▮ The Barlows state that Northfield's acceptance of these policies fosters a "Monday morning quarterback" scenario, where Northfield, after accepting all applications, can void any policy which, in retrospect, proves to be.a bad gamble. They rely on *Fernandez*, 906 F.2d 559, which explained in a thorough discussion the concept of materiality as applied to Florida Statute § 627.409(1) where a life insurance policy was at issue. However, the Barlows' reliance is misplaced. The insurance claim in *Fernandez* was governed by Florida insurance law, unlike the case at bar in which federal admiralty law controls. Reflecting the divergency of the two choices of law is the policy applied by that court compared to that which is applicable here. In Fernandez the court refused to broaden the concept of materiality, "[i]ndeed, to read Fla. Stat. § 627.409(1) as broadly as INA urges this court to do

would give insurers the power to play 'Monday morning quarterback,' . . . . The Florida disclosure statute is not intended for such use; its protections are more limited." *Id.* at 567 (quoting *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 674 F.Supp. 354 (D.C.Cir.1987)). However, the concept of *uberrima fidei* under federal law is broader in application, where materiality is defined as "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk. . . . [C]oncealment of such facts voids the policy, whether the concealment be due to fraud, negligence, accident, or mistake." *Kilpatrick*, 795 F.2d at 942–43 (footnote omitted).

*Uberrima fidei* embraces this broad standard to protect the insurer from the material misrepresentations which would be impractical to investigate from a policy's inception. In fact, there is no better example of this than with the Barlows' assertion itself. The Barlows point to 92 applications out of 333 provided which contain possible misrepresentations. To investigate each and every one of these claims would be both time consuming and expensive. Alternatively, placing the burden of good faith on the insured rather than the insurer, with penalties absolving the insurer should there be a misrepresentation, saves the costs of time and investigation which would normally be passed on, at least in part, to the insured. So, the good faith requirement saves money for both the insured and insurer at very little cost—simply the truthfulness of the insurance applicant.

Under this theory, Northfield need not investigate the potential "misrepresentations" on these 92 applications. It is only necessary to do so when prompted by some event or claim, much like what occurred with the Barlows' claim in the instant case. Therefore, the fact that the Barlows can point to 92 deviations from the "routine" application is not relevant to the Court's inquiry into materiality.

Furthermore, even if the Barlows could show that the deviations were indicative of

4. In the following discussion of these specific variations, the sum of Northfield and Atlantic deviations will be used to simplify analysis.

the relevant provisions' materiality, they fail to note deviations in any of the applications which parallel those misrepresentations made in their own application. The Barlows point only to driving history, prior claims, policy cancellations, boat ownership, and navigational compliance.[5] The 92 applications do not speak to five of the nine misrepresentations: (1) experience as a Navy commander, (2) training as a certified navigator, (4) applying for an unlimited license, (5) mastering in any weather, and (7) pending captain's license. Michael Hodnett stated in his affidavit that had he known of these misrepresentations, there would have been no quotation, binder, or policy issued to the Barlows on the JOSS ADVENTURER (doc. 3). The Barlows fail to contest this with any specific evidence, whether by affidavits or other documentation. For the foregoing reasons, the Court finds that misrepresentations (1), (2), (4), and (5), and (7) are material under the doctrine of *uberrima fidei* in that they have a bearing on Northfield's decision to insure the Barlows and at what premium..

### C. Conclusion

 Because the doctrine of *uberrima fidei* is firmly entrenched in federal maritime law in the Eleventh Circuit, the Court finds that it is the controlling law in this case. It is well settled in this circuit that where a doctrine is firmly entrenched in admiralty, federal law will control even in the face of contrary state authority.·

Taking all the evidence in a light most favorable to Defendants, the Court finds that a reasonable trier of fact must conclude that Defendants, Mr. and Mrs.· Barlow, made material misrepresentations on their insurance application regarding his status as a Navy commander, his training as a certified navigator, her pending captain's license, his application for an unlimited license, and her capabilities to master in any weather. After reviewing this evidence, the Court finds no existence of genuine issues of material fact as to these elements. Accordingly, summary judgment is warranted and Plaintiff's motion is due to be granted.

**5.** Of these, the Court has found, *supra,* that there are genuine issues of material fact as to driving

### III. SUMMARY

The Court's ruling in this matter may be summarized as follows, and IT IS HEREBY ORDERED:

1. Plaintiff's motion for summary judgment (doc. 28) is **GRANTED;**

2. The Court directs the clerk of the court to enter judgment for Plaintiff, NORTHFIELD INSURANCE COMPANY. Costs to be assessed by clerk of the court.

3. Plaintiff is ordered to submit within 20 days of this order all documents and authority in support of its claim for damages, including any materials and authority pursuant to this Court's order of September 30, 1997 granting leave to include punitive damages.

4. Defendant is ordered to respond to Plaintiff's claim for all damages within 30 days.

history and prior claims so they need not be discussed here under a materiality analysis.