**GREAT LAKES REINSURANCE (UK) PLC, Plaintiff,**

v.

**YELLOW FIN 36 LLC, et al., Defendants.**

**Case No. 8:08–CV–1851–T–17TBM.**

United States District Court, M.D. Florida, Tampa Division.

Aug. 26, 2010.

---

Allen K. Von Spiegelfeld, Eric C. Thiel, Banker Lopez Gassler, PA, Tampa, FL, Steven E. Goldman, Goldman & Hellman, Ft Lauderdale, FL, for Plaintiff.

Steven T. Wittmer, Law Office of Steven T. Wittmer, PA, Sarasota, FL, for Defendants.

## ORDER

ELIZABETH A. KOVACHEVICH, District Judge.

This cause is before the Court on:

Dkt. 28 Motion for Summary Judgment (Defendants)

Dkt. 30 Deposition—Luria

Dkt. 31 Deposition—McNelis

Dkt. 32 Deposition—Nero

Dkt. 33 Deposition—Usher

Dkt. 34 Deposition—Jones

Dkt. 35 Deposition—Melone

Dkt. 36 Motion for Summary Judgment (Plaintiff)

Dkt. 39 Statement of Undisputed Facts

Dkt. 40 Notice—Exhibits

Dkt. 43 Opposition Memorandum

Dkt. 44 Affidavit—Gilhooly

Dkt. 45 Affidavit—Usher

Dkt. 46 Opposition

Dkt. 48 Unsworn Affidavit (McNelis)

Dkt. 49 Reply

## ORDER

The Complaint (Dkt. 1) of Great Lakes Reinsurance (UK) PLC includes Count I, for declaratory judgment that, under theft exclusion (k) of marine insurance Policy No. 200/658/107786, no payment is due to Defendants, owners of the 2005 36 ft. Yellow Fin power vessel insured under the terms of that policy, and Count II, for declaratory judgment that Policy No. 200/658/107786 is void *ab initio* or may be rescinded based on Defendants' misrepresentations and/or failure to disclose material facts as to Defendants' prior history of marine losses. Plaintiff seeks a declaratory judgment that: 1) the relationship of

insurer and insured does not exist between Plaintiff and Defendants as to the alleged theft of subject vessel on June 14, 2008; 2) declaring that Policy No. 200/658/107786 does not afford coverage to Defendants for the alleged theft of the vessel on June 14, 2008; 3) declaring that coverage for the alleged theft of the vessel on June 14, 2008 is excluded under the subject Policy; and 4) declaring that Defendants' misrepresentations and/or failure to disclose material facts rendered Policy No. 200/658/107786 void *ab initio* and allows Plaintiff to rescind the policy of marine insurance, and any other appropriate relief.

Defendants have brought a Counterclaim for breach of contract for Plaintiff's denial of coverage for Defendants' claim for losses for the theft of the vessel on June 14, 2008 (Dkt. 17). Defendants seek the award of compensatory damages of $200,000 for the loss of the vessel, prejudgment and postjudgment interest, attorney's fees and court costs.

## I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> "The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are ... irrele-

vant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. But, "[i]f the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505.

## II. Statement of Facts

Plaintiff has filed a detailed Statement of Material Facts Not in Dispute (Dkt. 39). Defendants have provided a Statement of Material Facts within Defendants' Motion for Summary Judgment. Both statements are attached to this Order and incorporated by reference.

## III. Discussion

Defendants moves for entry of summary judgment on Defendants' Counterclaim for breach of contract (Dkt. 28). Plaintiff opposes Defendants' Motion.

Plaintiff Great Lakes Reinsurance (UK) PLC moves for summary judgment on Count II of the Complaint. Plaintiff seeks the entry of summary judgment declaring that the subject policy of marine insurance was void *ab initio* based on Defendants' alleged misrepresentations and/or failure to disclose prior marine losses on the application for insurance.

Plaintiff Great Lakes Reinsurance (UK) PLC states that Plaintiff has not moved for entry of summary judgment as to Count I due to the presence of a material factual dispute as to whether the vessel was "situate in a locked and fenced enclo-

sure" at the time of the alleged theft on June 14, 2008.

## A. Choice of Law

Defendants argue that Florida law applies as to the issue of exclusionary clause (k), and the federal maritime doctrine of *uberrimae fidei* governs the issue of whether a misrepresentation/failure to disclose in an application for marine insurance is material for purposes of voiding the contract.

Plaintiff Great Lakes Reinsurance (UK) PLC argues that New York law applies as to the issue of exclusionary clause (k), based on the choice of law provision within the insurance policy. Plaintiff agrees that the maritime doctrine of *uberrimae fidei* governs the issue of whether a misrepresentation in an application for marine insurance is material for the purpose voiding the contract.

Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable, unless the choice of law is shown to be unreasonable and unjust, or in conflict with a fundamental purpose of maritime law. The Court recognizes that the subject insurance policy shows Plaintiff's connection with New York, in that Plaintiff's agent for service of process is in New York (Dkt. 1–5, p. 15).

After consideration, the Court concludes that substantive New York law applies as to the issue of exclusionary clause (k).

## B. Misrepresentation on Application

### 1. Doctrine of *Uberrimae Fidei*

In *HIH Marine Services, Inc. v. Fraser*, 211 F.3d 1359, 1362–1363 (11th Cir.2000), the Eleventh Circuit Court of Appeals states:

It is well-settled that the marine insurance doctrine of *uberrimae fidei* is the controlling law of this circuit. *See Steel-* *met, Inc. v. Caribe Towing Corp.* 747 F.2d 689, 695 (11th Cir.1984); *Certain Underwriters [at Lloyds v. Giroire ]*, 27 F.Supp.2d [1306] at 1312 [ (S.D.Fla. 1998) ]; *International Ship Repair and Marine Serv., Inc. v. St. Paul Fire and Marine Ins. Co.*, 922 F.Supp. 577, 580 (M.D.Fla.1996). *Uberrimae fidei* requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk. *See Steelmet*, 747 F.2d at 695; *see also Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 300 F.2d 631, 646 (5th Cir.1962) (discussing the duty to disclose in marine insurance law); G. Gilmore & C. Black, *The Law of Admiralty* 62 (2d ed. 1975) ("[T]he highest degree of good faith is exacted of those entering [a marine insurance contract], for the underwriter often has no practicable means of checking on either the accuracy or the sufficiency of the facts furnished him by the assured before the risk is accepted and the premium and conditions set."). The duty to disclose extends to those material facts not directly inquired into by the insurer. *See Jackson v. Leads Diamond Corp.*, 767 F.Supp. 268, 271 (S.D.Fla.1991); *see also Cigna Property and Casualty Ins., Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 420 (9th Cir. 1998) ("Whether or not asked, an applicant for marine insurance is bound to reveal every fact within his knowledge that is material to the risk."). . . .

Under *uberrimae fidei* a material misrepresentation on an application for marine insurance is grounds for voiding the policy. *See Steelmet*, 747 F.2d at 695 (a misrepresentation, even if it is a result of "mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void" (quoting *Wilburn Boat Co.*, 300 F.2d at 646)). A misrepresentation is material if "it might have a bearing on

the risk to be assumed by the insurer." *Northfield Insurance Co. v. Barlow,* 983 F.Supp. 1376, 1380 (N.D.Fla.1997); *see also Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.,* 795 F.2d 940, 942–43 (11th Cir.1986) (materiality is "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk").

The Court notes that the subject policy provides, in Section 9:

> m) This contract is null and void in the event of nondisclosure or misrepresentation of a fact material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

█ The above provision shows that the parties intended *uberrimae fidei* to apply to the contract.

## 2. Defendants' Prior Losses

### A. Loss of Fishing Pole

Defendants argue that Defendant McNelis' testimony (Dkt. 31, p. 19) that he lost a fishing pole over ten years before the effective date of the subject insurance policy, and that he submitted a claim for this loss to his homeowner's insurance policy, was truthful and correct. Defendants argue that since the event was outside the time period inquired into by the application, Plaintiff had no basis to deny coverage for failure to report the loss to Plaintiff.

When a specific question is posed on an insurance application, the Court infers that the insurer considers the information sought to be material. The Court also notes that Defendants were granted a premium credit for Defendants' alleged ten-year history without marine losses.

█ Defendant McNelis' undisputed testimony establishes that the above loss was outside the time period Plaintiff Great Lakes Reinsurance (UK) PLC considered material. The Court concludes that the above loss cannot support Plaintiff's decision to void the insurance policy.

### B. Temporary Loss of Vessel

Plaintiff argues that the misrepresentation or nondisclosure of Defendant Melone's prior history of a marine loss on the application for marine insurance voids the marine insurance policy issued to Defendants. Plaintiff argues that Defendants and/or their brokers misrepresented or misled the underwriters concerning circumstances critical to the underwriting decision. Plaintiff argues that disclosure of Defendant Melone's marine loss to Plaintiff would have resulted in the issuance of a marine insurance policy at a higher premium than that paid by Defendants, and therefore Plaintiff has established the materiality of the misrepresentation or nondisclosure.

Defendants argue that Defendant Melone's temporary loss of possession of his Dorado vessel does not constitute a "marine loss." Defendants argues that the temporary loss of the vessel did not involve Defendant Melone as an "operator" of the vessel, Defendant Melone did not experience any financial loss for which his insurance carrier could have been liable, and there is no evidence to establish that the vessel was actually stolen.

### 1. Materiality

█ Under federal maritime law, materiality is a broad concept. "[M]ateriality" is defined as "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk." *Northfield Insurance Co. v. Barlow,* 983 F.Supp. 1376, 1379 (N.D.Fla.1997) (quoting *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.,* 795 F.2d at 942–43). In the context of marine

insurance, "concealment" is the failure to disclose "any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk assumed, and which is, in fact or law, within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge." *Steelmet v. Caribe Towing Corp.*, 747 F.2d 689, 695 (1984).

 "Marine loss history" is a fact material to the risk assumed in providing insurance. *All Underwriters at Lloyd's (London) Subscribing to Policy No. 200–451–7275 v. Kenney*, 986 F.Supp. 1384 (S.D.Fla.1997) (citing *Certain Underwriters at Lloyd's v. Montford*, 52 F.3d 219 (9th Cir.1995)). In this case, Plaintiff has provided the affidavit and deposition testimony of Beric Usher to establish that if Defendants' marine loss history had been disclosed, Plaintiff Great Lakes would have charged a higher premium. (Dkt. 45, pp. 12–13).

Defendants argue that the disappearance of a vessel from its mooring under unexplained circumstances and the recovery of the undamaged vessel the next day is not a "marine loss" that Defendants were required to disclose.

The Court notes that, after Defendants submitted Defendants' claim for the loss of their vessel in 2008, Plaintiff sent an investigator to interview each Defendant. An investigator interviewed Defendant Melone and recorded his statement. The statement was shown to Defendant Melone during his deposition, and Defendant Melone was questioned about the statement:

Q. On June 23, 2008—

A. Yep.

Q. —did you give a recorded statement to a gentleman named Sylvio Bueno of Nautilus Investigations?

A. Yes, sir.

Q. And did Mr. Bueno ask you whether you had had any prior marine losses?

A. Um—

MR. WITTMER: Object to the form. I think—well, you can answer it.

Q. Go ahead and answer, please.

A. I believe he did, and I believe I answered no.

Q. Well, let me read you what your answer is.

"Um, well, I did, but never did a—you know, yes, somebody stole my 23 foot Dorado."

Did you own a 23 foot Dorado at some point?

A. I still do, yes.

Q. Was that vessel stolen?

MR. WITTMER: Objection, form, lack of predicate, speculation, fails the best evidence rule.

You can answer.

THE DEPONENT: Um, at that time I owned that Dorado with a partner.

Q. Was it stolen?

A. At that time we might have believed it was stolen, but we have no evidence it was stolen. We now that are—looking back and speaking with my ex-partner on the boat, it could have been a—a whole different set of circumstances.

Q. Well, let me read what you—again, the full statement that you gave to Mr. Bueno. You said, "Um, well, I did, but never did a—you know, yes, somebody stole my 23 foot Dorado. They lowered it off the lift, and I guess they never got the boat started or found the on/off switch or whatever the case may be. They couldn't get the boat started, and the next morning they found it wedged up underneath the Siesta Key Bridge. One of the neighbors that lives next to the bridge is a friend of mine, and he realized the boat was mine, called me up, and we went down and took care of the problem."

Is that what you told Mr. Bueno?

MR. WITTMER: Objection, speculation, um, predicate, mischaracterizes or misstates, um, objection to the form of the question, and violates the best evidence rule.

You can answer if you can.

THE DEPONENT: Um, the location of—

Q. My question is is that what you told Mr. Bueno?

A. Yes.

Q. Okay. So—then he asked you when this was, and you said it was five years ago, six years ago.

Is that correct? Is that when the incident occurred?

A. I believe so.

(Dkt. 35, Melone Deposition, pp. 5–6).

Defendant Melone further testified:

Q. This is the neighbor that alerted you to the fact that the boat was floating next to Siesta Key Bridge?

A. Exactly.

Q. Okay.

A. Um, went down there, looked at the boat, met my partner at the boat, saw no damage on the boat, nothing out of the ordinary on the boat, um, brought the boat home.

Q. All right. You told Mr. Bueno, "There was probably $1,500 to a couple thousand dollars of damage done to the—to the vehicle"—

A. Um-hum.

Q. —"and we just at that point decided not to do a claim because our deductible was somewhere around the same number and it didn't matter."

So there was damage?

A. Well, Mr. Bueno was shutting his tape recorder on and off multiple times. I can't remember just how many, but multiples times.

Q. My question to you—

MR. WITTMER: No, let him—let him finish, please.

MR. GOLDMAN: Okay.

THE DEPONENT: Multiple times and was not letting—not recording the answers that I think that he didn't want to hear from—from what I understood, so . . .

Q. Did you tell Mr. Bueno that the vessel sustained 1,500 to $2,000 worth of damage?

A. Mr. Bueno—

Q. Did you tell him that?

A. Mr. Bueno led me into saying that there was no damage. I said there was no damage. He said, "There was not one damage from being caught up underneath the bridge?" I said, "It might have had a scratch or two." He said, "If you had to put a number on it?" I said, "I don't know. There was a scratch on the stainless steel steering wheel. Are you telling me I need to buy a new stainless steel steering wheel? If you're telling me that, it could have been a thousand dollars."

Q. Did you tell—

A. But there was no—there was no— we did not fix anything on the boat.

Q. Did you tell Mr. Bueno that there was $1,500 to $2,000 worth of damage done to the vessel?

A. Because he kept making me put a number on what I had thought that the damage could have been.

Q. So again, my question is for whatever reason, however it got there, did you tell Mr. Bueno that the vessel had between 1,500 and $2,000 worth of damage?

A. Yes.

Q. Okay. You didn't put in an insurance claim on it, though?

A. No.

Q. Okay. And was the reason you didn't put in an insurance claim was

because that would just about equal what the deductible was on the policy?

A. No, because when we found the boat, there was no damage. There was no reason to put in an insurance claim. Like I said, he shut off his tape recorder multiple times, and he kept going into well, there had to be some damage, and I kept saying there wasn't any. He said, "There was nothing at all?" I said—I said, "Maybe a scratch here or two that me and my partner might have seen, but to the best of my knowledge, you know, the boat's two or three years old, you know, we—we saw nothing wrong."

Q. Did you tell Mr. Bueno, "We just at that point decided not to do a claim because our deductible was somewhere right around the same number and it didn't matter"?

A. And again—

Q. Is that what you told him?

A. I—I don't recall.

Q. Do you want to look at your statement?

A. If you want me to.

Q. Please do.

MR. WITTMER: No, I'm—and I'm just going to raise the same objections, speculation, predicate, violates best evidence rule. That statement is not the complete statement.

THE DEPONENT: Absolutely not the complete statement.

Q. Is that what it says here?

A. Um . . .

Q. Read it into the record again if you want.

A. Show me which one it was now. "There was probably $1,500 to a couple of thousand dollars of damage done to the—to the vehicle, **and** we just at that point decided to—not to do a claim because our deductible was somewhere right around the same number, and it didn't matter."

From my recollection, I remember Mr. Bueno putting those words in my mouth before he would tape—tape record me again, and he was leading me into that conversation to try to put a number on some sort of damage that happened to the boat, and when I kept telling him there was no damage, in fact, I don't even believe—we don't even know if the boat was actually stolen. We don't know if a rogue wave lifted it off the lift. I don't know if one of my partner's children turned the lift on and walked away. I don't know if the last person the day before did not shut the lift off when he walked into the house which would incur the lift to go up, go back down, boat float off, and that's—

(Dkt. 35, pp. 6–7).

Defendant Melone further testified:

Q. And your testimony now is that there was no damage, but you told Mr. Bueno that there was 1,500 to $2,000 in damage?

A. My testimony at that time was that there was no damage, and Mr. Bueno proceeded to shut off his tape recorder again and go into telling me, "Well there had to be some damage if it touched the bridge or it banged up against the bridge one or twice or something?" I said, "You know, again, if you're trying to get me to put a number on something, I—I don't know what to tell you except we noticed a scratch on the stainless steel steering wheel on the tower of the boat while it must have banged up against the bridge. I don't know if that damage came from that particular time or not, but that was the only thing we could see as being damaged."

Q. All right. And did you ever get that damage repaired?

A. No.

Q. Why not?

A. Because it was insignificant, and I don't even really know if it happened at that time. It could have happened before. We bought the boat used.

The insurance application asks: "Was any operator involved in a marine loss in the last ten years (Insured or not)? (Dkt. 1–2). Defendants answered this question "No." For the purpose of determining whether the response to this question is a misrepresentation, the Court needs to know whether any Defendant sustained a marine loss within the ten years prior to the application in April, 2006. Aside from the unexplained disappearance of the entire vessel, damage to a vessel qualifies as a marine loss. Even if the application question is ambiguous, *uberrimae fidei* requires the disclosure of all marine losses during the relevant time period. Therefore, as to the incident in 2002 or 2003, the issue of whether Defendant Melone's vessel sustained damage in that incident is a critical issue. If there was damage to Defendant Melone's vessel at that time, insured or not, and repaired or not, Defendants were required to disclose it. Defendant Melone testified that he and his partner looked at the damage and decided not to pursue an insurance claim. This is circumstantial evidence that both believed that the vessel was damaged in the incident. Defendant Melone now denies that the vessel was damaged in the incident. After consideration, the Court concludes that this issue should be resolved by a jury.

As to the issue of a misrepresentation which would justify Plaintiff's decision to void the subject insurance policy, Defendants' Motion for Summary Judgment (Dkt. 28) and Plaintiff's Motion for Summary Judgment (Dkt. 36) are **denied.**

C. Theft Exclusion

After consideration, the Court finds that there are material factual disputes as to whether the vessel "was situate in a locked and fenced enclosure." The Court therefore **denies** Defendants' Motion for Summary Judgment as to this issue. Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 28) is **denied** and Plaintiff's Motion for Summary Judgment is **denied.** This case will be set for trial on the next available trial calendar.