673 So.2d 532 (1996)
Clinton E. TURNER, Appellant,
v.
S.G. FITZSIMMONS, IV, and David Michaels, Appellees.
No. 95-391.
District Court of Appeal of Florida, First District.
May 7, 1996.
Rehearing Denied June 4, 1996.
*533 Dana C. Matthews, P.A., Destin, for Appellant.
Cecilia D. Redding of Bryant and Higby, Panama City, for Appellees.
VAN NORTWICK, Judge.
Clinton E. Turner, who purchased a Panama City Beach motel from appellee S.G. "Bo" Fitzsimmons, IV, appeals a final judgment awarding him compensatory damages in his action based upon alleged misrepresentations made by Fitzsimmons and appellee David Michaels in connection with the motel sale. Turner contends on appeal that the trial court should have granted him rescission of the sales contract. Alternatively, he argues that, in the event rescission was not appropriate, the trial court should have allowed his claim for punitive damages to go to the jury. Finally, he contends the trial court should not have permitted Michaels to recover $2,209.90 against him on the equitable theory of unjust enrichment. For the reasons that follow, we affirm the trial court's denial of rescission and refusal to submit the claim of punitive damages to the jury, but reverse the award of damages to Michaels on a claim of unjust enrichment.

Factual Background and Procedural History
In May 1991, Turner purchased the Sportsman's Motel on Panama City Beach from Fitzsimmons for a price of $230,000. Michaels acted as the agent for the sale. Turner paid the purchase price in part in cash, in part by the delivery of a promissory note secured by a mortgage on the motel, and in part by the conveyance to Fitzsimmons of a beach house with a stipulated value of $80,000. Fitzsimmons and Michaels *534 then agreed that Michaels would buy the beach house from Fitzsimmons for $62,000, with the $18,000 difference between Fitzsimmons' purchase price and the sale price to Michaels constituting Michaels' commission on the sale of the motel. When Turner conveyed the beach house to Fitzsimmons in May 1991, the name of the grantee on the warranty deed was left blank and the deed was delivered to Michaels. However, Michaels did not promptly record the warranty deed. In August 1991, the Internal Revenue Service (IRS) placed a tax lien against the beach house for unpaid taxes allegedly owed by Turner. Michaels recorded his deed in September 1991. In October 1991, he sought to sell the beach house, but was required to clear the title of the tax lien. He approached Turner about the IRS lien, and Turner claimed that he did not have any tax liability to the IRS. Nevertheless, Michaels satisfied the lien to facilitate transfer of the property. He then filed suit in county court seeking return of the amount of money he paid IRS plus court costs for a total amount of $2,209.90.
The litigation below was initiated when Fitzsimmons filed a foreclosure suit on the note and mortgage given to him by Turner as part of the purchase price for the motel. Turner counterclaimed for rescission and damages. The damages claim, which was against Turner and Michaels, was based upon theories of negligent misrepresentation and fraud. Michaels' county court action was consolidated with this circuit court action.
Without detailing the considerable evidence presented, at the trial Turner contended that Fitzsimmons and Michaels misrepresented and failed to disclose material facts about the income, expenses and physical condition of the motel, and that he relied on these misrepresentations in entering into the contract for purchase of the motel. Turner said that had he known of the true state of affairs of the motel, he never would have purchased it.
Before the jury retired to deliberate, Turner moved to conform the pleadings to the evidence and allow the jury to decide the issue of punitive damages. Specifically, Turner argued that the evidence showed appellees had intentionally concealed the financial records which would have revealed the "proper worth" of the motel, and, thus, punitive damages were appropriate. Appellees objected, noting that Turner had filed no pleading requesting punitive damages and arguing that the motion was untimely and that appellees had not been given sufficient notice that the issue of punitive damages would be injected into this proceeding.
The trial court ruled that it would not address the timeliness issue, but, rather, would reach the merits of the punitive damages question. The trial judge said: "I don't think that the behavior alleged here, even if the jury believes everything that the Plaintiffs are alleging, rises to the level that the jury should be able to consider punitive damages."
Thereafter, the jury was instructed on misrepresentation. Though there were comments in the instructions relating to fraudulent misrepresentation, the overall tenor of the instructions was to advise the jury of the elements of negligent misrepresentation. The special verdict interrogatories, which were submitted to the jury without objection, did not ask the jury to find the elements of fraud and instead related solely to issues of negligent misrepresentation.[1] The jury returned a special verdict awarding damages in the amount of $23,000.
While the jury was deliberating, the court took testimony on the foreclosure claim, the rescission claim and Michaels' claim for restitution. The court agreed that foreclosure *535 was appropriate and ruled that Michaels should be reimbursed the amount of money which he claimed, $2,209.90. The trial court reserved ruling on rescission to give Turner the opportunity to present evidence on the present value of the motel. When the value evidence was not submitted, the trial court denied rescission and entered final judgment against Fitzsimmons and Michaels for damages in the amount of $23,000, which was offset by the $2,209.90 in damages awarded to Michaels.

Rescission Claim
In his first point, Turner contends that he should have been awarded rescission of the contract because he presented evidence of fraud and misrepresentation. As this court has ruled, however,
a condition precedent to the granting of the remedy of rescission is that the other party be returned to his status quo. Generally, a contract will not be rescinded even for fraud when it is not possible for the opposing party to be put back into his pre-agreement status quo condition.
Royal v. Parado, 462 So.2d 849, 856 (Fla. 1st DCA 1985). In this instance, Turner presented no evidence that he could return the motel to Fitzsimmons in the same or substantially the same condition as when he took possession.
Further, while we recognize that, where restoration to the status quo is impossible, a court may still grant rescission provided the equities between the parties can be balanced, Braman Dodge, Inc. v. Smith, 515 So.2d 1053, 1054 (Fla. 3d DCA 1987), Turner failed to present evidence on which the trial court could have balanced the equities. Below, despite several statements from the trial judge that she would require evidence of the value of the motel to grant rescission as a remedy, Turner submitted no evidence of the present value of the motel. Without the present value evidence, the trial court was unable to calculate any amount of money that might be necessary to balance the equities while granting rescission. Thus, we affirm the trial court's denial of rescission.

Punitive Damages Claim
Turning to the trial court's failure to submit punitive damages to the jury, Turner argues that, because he presented issues of fact as to fraud and the trial court instructed the jury on elements of fraud, the question of punitive damages should have been submitted to the jury. He relies upon First Interstate Development Corp. v. Ablanedo, 511 So.2d 536, 539 (Fla.1987), in which the court ruled that proof of fraud sufficient to support compensatory damages necessarily is sufficient to create a jury question regarding punitive damages, and once a case for fraud has been made, the punitive damage issue is for the jury, not the court, to decide. The Ablanedo court said:
This is so because intentional misconduct is a necessary element of fraud. Indeed, to prove fraud, a plaintiff must establish that the defendant made a deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff.
Id. at 539.
We agree with the appellees that Turner's attempt to inject punitive damages into this suit was untimely.[2] As the Florida Supreme Court recently ruled, under section 768.72, Florida Statutes (1993), a plaintiff is required to obtain leave from the trial court to amend the complaint before punitive damages may be asserted and any punitive damages claim alleged prior to a party asking for and receiving leave of court must be dismissed or stricken. Simeon, Inc. v. Cox, 671 So.2d 158, 160 (Fla.1996).[3] This rule cannot *536 be circumvented, as attempted here, by the presentation of punitive damages evidence in the trial of the cause and then seeking to amend the complaint as the case goes to the jury. By attempting to present evidence of a punitive damages claim to the jury, Turner was seeking to assert a punitive damages claim before obtaining leave of court to do so.
Moreover, we find that Turner's late injection of the punitive damages issue into this case was prejudicial to appellees. Appellees here had no opportunity to present a defense to the claim for punitive damages by presenting evidence of their net worth. While evidence of net worth is not a prerequisite to an award of punitive damages, a defendant should be given an opportunity to present evidence of net worth, in the event his net worth is meager, in order to mitigate the damage award. See generally, Rinaldi v. Aaron, 314 So.2d 762, 765 (Fla.1975). Moreover, to review an award of punitive damages on the grounds of excessiveness, it is incumbent upon the defendant to introduce evidence of his net worth. Papcun v. Piggy Bag Discount Souvenirs, Food & Gas Corp., 472 So.2d at 882. In this case, Turner sought to submit the punitive damages issue to the jury without giving appellees an opportunity to present defensive evidence on net worth, and, in the event the jury arrived at an excessive award, appellees would have been precluded from seeking review of that award.
We are not unmindful of the Supreme Court's decision in W.R. Grace & Co.-Conn. v. Waters, 638 So.2d 502, 506 (Fla.1994), which permits a trial court, upon timely motion, to bifurcate the determination of the amount of punitive damages from the remaining issues at trial. Under this procedure, the jury could first determine the issue of entitlement to punitive damages, and if the jury determines such damages are warranted, the same jury could then hear evidence relevant to the amount of punitive damages. The use of this bifurcation process may have been appropriate in the instant case. However, Turner did not request this bifurcation. Instead, Turner submitted a special interrogatory, which the trial court rejected, that requested the jury both to determine entitlement to punitive damages and award an amount of damages.

Unjust Enrichment Claim
Finally, we address Michaels' judgment for damages based upon unjust enrichment. To recover upon the theory of unjust enrichment, Michaels was required to prove that a benefit was conferred upon Turner, that Turner either requested the benefit or knowingly and voluntarily accepted it, that a benefit flowed to Turner, and that under the circumstances, it would be inequitable for Turner to retain the benefit without paying the value thereof. Gomes v. Stevens, 548 So.2d 1163 (Fla. 2d DCA 1989). In the instant case, however, Michaels failed to establish that Turner either requested payment of the IRS lien or knowingly and voluntarily accepted it. To the contrary, the undisputed facts show that Turner consistently claimed that he had no obligation to the IRS for unpaid taxes. Thus, the record below does not support a recovery based upon unjust enrichment, and we reverse the trial court's judgment awarding Michaels $2,209.90.
AFFIRMED in part and REVERSED in part, and REMANDED for proceedings consistent with this opinion.
WOLF and WEBSTER, JJ., concur.
NOTES
[1] A special verdict, as distinguished from a general verdict, is one in which the jury in a civil case resolves the disputed facts in separate findings based on the evidence presented to it, referring the decision on the facts found as a matter of law to the court. See, generally, 55 Fla.Jur.2d, Trial § 222 (1984). Had Turner wanted the jury to determine the presence of fraud, he should have made certain that the special verdict asked the jury to determine if the elements of fraud were present in this case. Failure to object to a verdict form regarding defects that are not of a constitutional or fundamental character constitutes a waiver of such defects. See, Papcun v. Piggy Bag Discount Souvenirs, Food & Gas Corp., 472 So.2d 880, 881 (Fla. 5th DCA 1985) and cases cited therein.
[2] Because we affirm the trial court on timeliness grounds, we do not reach the question of whether, on the facts below, the trial court abused its discretion in refusing to submit the issue of punitive damages to the jury. See, Dr. P. Phillips & Sons v. Kilgore, 152 Fla. 578, 12 So.2d 465, 467 (1943) ("It is in the province of the trial court to determine as a matter of law whether or not there is a basis for punitive damages and instruct the jury accordingly.").
[3] Section 768.72 creates a positive legal right in the defendant not to be subject to financial worth discovery until the trial court has determined that there is an evidentiary basis for a punitive damages claim to go to the jury. Key West Convalescent Center, Inc. v. Doherty, 619 So.2d 367, 368 (Fla. 3d DCA 1993).