761 So.2d 415 (2000)
David A. SIEGEL, Appellant,
v.
LANDQUEST, INC., et al., Appellees.
No. 5D99-2567.
District Court of Appeal of Florida, Fifth District.
May 19, 2000.
Rehearing Denied June 13, 2000.
Michael E. Marder and David R. Lenox of Greenspoon, Marder, Hirschfeld, Rafkin, *416 Ross & Berger, P.A., Orlando, for Appellant.
Joseph H. Williams of Troutman, Williams, Irvin, Green & Helms, P.A., Winter Park, for Appellee Landquest, Inc.
PETERSON, J.
David A. Siegel appeals a summary judgment finding that he is not entitled to a real estate commission on the sale of the Osceola Trace property (Osceola Trace) made by the 535 Land Trust to the Osceola Development Project, a limited partnership. Because the record contains differing versions of the facts surrounding the sale of Osceola Trace, we vacate the summary judgment and remand for resolution of the disputed facts.
Siegel alleged in his pleadings before the trial court that he is a licensed real estate broker and the President of Central Florida Investments, Inc. ("CFI"). CFI owns 101 acres adjacent to Osceola Trace and Siegel had developed the idea of creating a trade and exposition center on the two parcels in a joint venture. In pursuit of the concept, he introduced Robert L. Miller, a real estate developer and officer of the entity that ultimately purchased Osceola Trace property, to Steven Leitner, the attorney and agent of the seller of Osceola Trace. The purpose of the introduction was to discuss the future joint development of the parcels. Siegel alleges that he specifically informed Miller and Leitner that he was acting in the capacity of both broker and principal. Following the initial introduction, Siegel admits that he allowed Miller to carry on all negotiations with Leitner with respect to the joint venture concept, but argues that Miller, nonetheless, kept him informed of the progress of the negotiations and that he, Siegel, continued to be involved in the political and community aspects of the proposed venture. Siegel asserts further that he was intentionally excluded from the final negotiations which resulted in Miller deciding to buy Osceola Trace without paying Siegel a broker's commission.[1]
The seller claims that Siegel only showed Miller the adjoining property owned by Siegel's company, CFI, thereby suggesting that Siegel never attempted to sell Osceola Trace to Miller. The seller further suggests that Siegel only "voluntarily" introduced Miller to Leitner, and that while the idea of a possible joint venture was discussed, it was eventually rejected. It was only after Leitner rejected the joint venture that Miller and Siegel discussed the purchase of Osceola Trace. At that point, Siegel advised that he would not make a financial investment and that ended Siegel's involvement. Miller and Leitner then negotiated the sale of the property and as a precaution, the contract for sale addressed the potential claims by Siegel and another broker known as Landquest.[2] The seller emphasizes that Siegel neither mentioned that he expected a commission nor requested a listing to market Osceola Trace.
The fact that Leitner and Siegel did not execute a specific listing agreement or specifically discuss the amount of a commission does not summarily defeat Siegel's claim for a commission. Siegel seeks a commission on the theories of implied contract, unjust enrichment and quantum meruit, and alleges that he informed both Miller and Leitner that he would be acting as both broker and owner in the contemplated transaction. In the absence of a *417 special contract, a broker is entitled to a commission when he or she is the "procuring cause" of a sale. See generally Ralph E. Boyer, Florida Real Estate Transactions, § 2.05 (1999); Florida Real Property Sales Transactions, § 2.20 (1997)(noting that the question of whether a broker was the procuring cause of a sale is one of the most difficult to determine). The seminal case on the subject, Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, 878 (1944), explained that a broker will be entitled to a commission as the procuring cause, "[i]f the broker has brought the parties together and a sale is effected as a result of the continuous negotiations inaugurated by him." The supreme court later clarified that continuous negotiations as referred to in Taylor means "continuous negotiations between the seller and the prospective purchaser conducted by the broker." Shuler v. Allen, 76 So.2d 879, 883 (Fla.1955). The broker must be involved in the continuing negotiations between the seller and the buyer; in other words, it is not enough for the broker to just have brought the buyer and seller together. The sale, however, does not need to be the result of continuous negotiations conducted by the broker if the seller and buyer intentionally exclude the broker from the negotiations. Sheldon Greene & Assoc. v. Rosinda Inv., 475 So.2d 925, 927 (Fla. 3d DCA 1985); see also South Pacific Enters. v. Cornerstone, 672 So.2d 568 (Fla. 4th DCA 1996); Nat'l Airlines, Inc. v. Oscar E. Dooly Assoc., Inc., 160 So.2d 53 (Fla. 3d DCA 1964).
Our review of the allegations and depositions in the record indicate genuine issues of material fact as to whether Siegel attempted to sell Osceola Trace to Miller, whether Siegel's introduction to Leitner stimulated continuing negotiations resulting in the sale, whether Siegel was deemed a part of these continuing negotiations by his involvement in the political and community aspects of the proposed joint venture, and whether Siegel was intentionally excluded by Leitner and Miller from the final negotiations. In sum, while Siegel's claim appears weak at this juncture of the litigation, genuine issues of material fact still exist as to whether Siegel, in his capacity as a broker, was the procuring cause of the sale of Osceola Trace. See, e.g., Easton-Babcock & Assoc. v. Fernandez, 706 So.2d 916 (Fla. 3d DCA 1998) (whether a broker is the procuring cause of a sale are questions of fact that the jury must decide from the surrounding circumstances.); United Farm Agency of Florida, Inc. v. DKLS, Inc., 560 So.2d 1212 (Fla. 3d DCA 1990); Allen C. Ewing & Co. v. Freedle, 521 So.2d 384 (Fla. 1st DCA 1988); Clark v. Sherman, 452 So.2d 952 (Fla. 5th DCA 1984); Fearick v. Smugglers Cove, Inc., 379 So.2d 400 (Fla. 2d DCA 1980).
SUMMARY JUDGMENT VACATED; REMANDED.
THOMPSON and SAWAYA, JJ., concur.
NOTES
[1] Siegel also filed third party claims against Osceola Trace Development, Osceola Development Project, and Miller for, inter alia, breach of joint venture agreement and tortious interference with the commission claim.
[2] Specifically, paragraph 19 of the purchase and sale agreement provides in pertinent part that the "[b]uyer alone shall be responsible for any claims by Land Quest [sic], Inc., and /or Gregory Goodwin, Lic. Real Estate Broker, or from David Siegel, Lic. Real Estate Broker or his affiliated companies. ... [and that] [b]uyer agrees to defend against any claims by these brokers and/or indemnify Seller for any damages, commissions or costs related to their possible claims."