[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 12 2001
THOMAS K. KAHN
CLERK

_____

No. 99-15367

_____

D. C. Docket No. 98-00015-CV-RV-SMN

MEDIA SERVICES GROUP, INCORPORATED,
a Virginia corporation,

Plaintiff-Appellee,

versus

BAY CITIES COMMUNICATIONS, INC.,
a Florida corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 12, 2001)**

Before BLACK, FAY and COX, Circuit Judges.

FAY, Circuit Judge:

Defendant Bay Cities Communications, Inc. ("Defendant") appeals from the district court's judgment in favor of Plaintiff Media Services Group, Inc. ("Plaintiff") in the amount of $61,116 plus interest for brokerage services that facilitated the sale of a radio station owned by the Defendant. The district court found that Plaintiff provided services of value to the Defendant for purposes of its unjust enrichment claim. On appeal, Defendant argues that Florida law does not recognize unjust enrichment as a basis for recovery of a broker's commission. Alternatively, Defendant contends Plaintiff cannot recover under a theory of unjust enrichment because Plaintiff failed to prove that it conducted continuing negotiations with the ultimate purchaser or was the procuring cause of the sale. We affirm on the basis that the district court's findings of fact are not clearly erroneous, and Florida law does recognize unjust enrichment as a cause of action by a broker.

I.    BACKGROUND

As found by the district court, Plaintiff is in the business of brokering the sale of media properties, including radio and television stations. Defendant, at all times relevant to the present dispute, owned and operated WMXZ-FM, a radio station located in Destin Florida. In November 1995, the parties entered into a station marketing agreement that granted Plaintiff a 90-day exclusive right to sell

the Defendant's radio station. Although the Defendant exercised its right to terminate the agreement on February 23, 1996, the district court found that the Plaintiff continued to market WMXZ-FM with the knowledge and assistance of Defendant.[1] In early 1996, the Plaintiff's vice-president sent Root Communications ("Root") a list of radio stations, including station WMXZ, that were available for sale. In April 1996, Plaintiff arranged for Root personnel to tour WMXZ and meet Jack Jernigan, a shareholder of the Defendant. In May 1996, Plaintiff attempted to arrange the sale of WMXZ, as a package with three other stations, however the buyer elected not to complete the purchase. In October 1996, Plaintiff sent out offering memoranda marketing WMXZ with two other stations, and again contacted Root to solicit an offer for WMXZ. Plaintiff continued to approach prospective buyers in late 1996 and early 1997.

In December 1996, Plaintiff informed Defendant that it had located a buyer, and Defendant executed a letter agreement dated January 16, 1997 acknowledging the Plaintiff's representation of the Defendant in the proposed sale of WMXZ to Hochman Communications, Inc. ("Hochman"). Defendant accepted Hochman's offer on April 3, 1997, however, Hochman had difficulty obtaining adequate

---

[1] The district court found that the Defendant provided the Plaintiff with updated financial data to aid in the Plaintiff's preparation of additional offering memoranda.

financing. Nevertheless, Defendant continued to express some interest in a sale to Hochman. As part of continuing progress reports, Plaintiff informed Defendant on June 13, 1997 that Hochman would obtain financing in approximately one week. Unfortunately, by the time Plaintiff communicated, on June 27, 1997, that Hochman had secured financing, Jernigan had initiated contact with Root Communications' Tom DiBacco.[2] As a result of this contact, Root made an offer to buy WMXZ on June 27, 1997. On August 25, 1997, Defendant signed a contract for the sale of the station to Root for the agreed purchase price of $2,444,651.29.

The district court found that Plaintiff attempted to contact Defendant several times in June 1997.[3] When one of the Defendant's shareholders finally returned Plaintiff's call, it was to inform Plaintiff that Defendant had found another buyer. Defendant would not identify the buyer, and did not invite the Plaintiff to participate in the negotiations. Plaintiff sent Defendant a letter on August 5, 1997, stating that it had introduced Root to the Defendant and was concerned about being

---

[2] The district court found that Jernigan called DiBacco in mid-June of 1997 and proposed that DiBacco join with Jernigan in buying WMXZ from the Defendant's other shareholders. In reply, DiBacco suggested an outright sale of the station to Root.

[3] Although the District Court's Order indicates that Plaintiff's agent contacted the Defendant in June 1996, we assume the date must be a typographical error based on the chronology of events.

4

left out of the negotiations. Nevertheless, in October 1997, Defendant informed Plaintiff that it did not intend to pay any commission for the sale of WMXZ to Root. Plaintiff filed suit in the District Court for the Northern District of Florida on January 20, 1998, alleging breach of an oral contract to pay a brokerage fee upon the sale of WMXZ (Count I), unjust enrichment (Count II), and quantum meruit (Count III). Based on the evidence presented at trial, the district court ruled in favor of the Plaintiff on its unjust enrichment claim, and awarded Plaintiff the value of its services relating to the sale of WMXZ.[4]

## II     DISCUSSION

We review the district court's conclusions of law de novo. Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998). We will not disturb the district court's findings of fact unless they are clearly erroneous. Godfrey v. BellSouth Telecommunications, Inc., 89 F.3d 755 (11th Cir. 1996).

Contrary to Bay Cities' position on appeal, Florida law recognizes that a broker may recover compensation under the theory of unjust enrichment. In Banks

---

[4] Before trial, the district court ruled that Plaintiff's claims for breach of an oral agreement and quantum meruit would be tried by a jury, and that its claim for unjust enrichment, as an equitable remedy, would be tried by the court. The jury returned a verdict for the Defendant on Counts I and III, from which neither party appeals.

Real Estate Corp. v. Gordon, 353 So.2d 859, 860 (Fla. 3d DCA 1977),[5] the court stated that, to establish a prima facie case on this theory, the Plaintiff must show either the existence of an implied contract to pay him for services in finding and negotiating with the ultimate purchasers (citing Estes v. Moylan, 94 So.2d 362 (Fla. 1957)), or that he was the procuring factor in the sale.  In order to be considered the procuring cause of the sale, "the broker must have brought the [parties] together and effected the sale as a result of continuous negotiations inaugurated by him unless the seller and buyer intentionally exclude the broker and thereby vitiate the need for continuous negotiations."  Sheldon Greene & Associates, Inc. v. Rosinda Investments, N.V., 475 So.2d 925, 927 (Fla. 3d DCA 1985); rev. dismissed, Horn v. Sheldon Greene & Assoc., Inc., 502 So.2d 421 (Fla. 1987).[6]  "When the broker has brought the prospective parties together, they cannot

_____

[5] Under Erie, we must apply Florida law.  Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  Moreover, in the absence of controlling state precedent, we are bound by the decisions of intermediate state courts unless there is some persuasive indication that the state's highest court would decide the issue differently.  See Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir.1983).

[6] The Florida Supreme Court dismissed the petition for review after further examination led the Court to factually distinguish the case presented in Shuler v. Allen, 76 So.2d 879 (Fla.1955).  Horn, 502 So.2d at 422.  In Shuler v. Allen, a case relied upon by Defendant, the court held that the seller had the right to assume that the broker had abandoned an oral listing where the broker had failed, for at least seventeen months, to conduct any negotiations with the seller and had failed even to convey to the seller that the broker was working on the listing.  See id.  We also distinguish the case at bar because Plaintiff maintained uninterrupted contact with the Defendant throughout the Hochman negotiations.  Thus, Defendant knew of and encouraged Plaintiff's continuing efforts to broker a sale of WMXZ.

6

complain that the broker did not participate in negotiations when they have purposely excluded the broker from these negotiations by dealing with one another directly and in secret." First Realty Corp. v. Standard steel Treating Co., 268 So.2d 410, 413 (Fla. 4th DCA 1972).

Appellant misplaces reliance on R.C. Hilton Assoc., Inc. v. Stan Musial and Biggies's Inc., 702 F.2d 907 (11th Cir. 1983) because in that case, a panel of this Court assumed without deciding that a broker could recover under a theory of unjust enrichment. The district court, however, had found that the broker in Hilton had neither an express nor an implied contract with the seller. Since relief by a broker under unjust enrichment must be based on express or implied contract, the Court rejected this theory of recovery based on the facts. The Court noted that the seller explicitly told the broker that it did not intend to pay a commission and that the broker would have to arrange for its commission from the buyer. Thus, the broker in Hilton had no reasonable expectation of receiving compensation for its services. We read Florida law to state that a broker who brings the buyer and seller together may be entitled to a commission in the absence of an express contract, even if the sale was not a result of continuous negotiation conducted by the broker, if the seller and buyer intentionally exclude the broker from the negotiations. Siegel v. Landquest, Inc., 761 So.2d 415 (Fla. 5th DCA 2000). Although the

7

district court made no specific findings of intentional exclusion, we cannot read the district court's order and detailed findings of fact without concluding that the Defendant's conduct amounted to intentional exclusion under Florida law.[7]

The Defendant contends that the district court's findings do not support the conclusion that Plaintiff was "intentionally excluded" from "secret negotiations" in order to avoid the payment of a commission. However, as the court in Sheldon Greene held, intentional exclusion does not require a showing of bad faith. Rather, intentional exclusion means that the buyer has negotiated directly with the seller without the participation of the broker who first brought the parties together. This negotiation is called "secret" because only the buyer and seller are in on it. Sheldon Greene, 475 So.2d at 928. In this case, the district court found that the Defendant had no prior contact with or knowledge of the buyer before the station tour and meeting arranged by the Plaintiff in April 1996. In addition, the district court found that the Defendant initiated contact with Root in mid-June 1997,[8] and that the parties negotiated for the sale of WMXZ without the Plaintiff despite

---

[7] We do not find this conduct malicious. In fact, we believe that it is not uncommon for buyers and sellers to attempt to circumvent brokers.

[8] Although Jernigan testified that he called DiBacco and was initially unaware that DiBacco worked for Root, the district court found that Jernigan knew that DiBacco had recently sold his radio stations to Root and had started working for Root. The district court reasoned that the simple fact that Jernigan was able to contact DiBacco at his new workplace indicated that Jernigan was aware of DiBacco's new employment with Root.

Plaintiff's written objection to its exclusion from the negotiations. That Jernigan was a long-time friend of Root's Tom DiBacco, or that DiBacco suggested the sale does not change the district court's implicit finding that the parties excluded the broker after the broker brought them together. See, e.g., Alcott v. Wagner & Becker, Inc., 328 So.2d 549 (Fla. 4th DCA 1976) (holding that a broker who advertised the sellers' property established a prima facie right to recover a commission where the prospective buyer read the ad, discovered the seller was a friend, and consummated the sale without the broker).

Defendant correctly points out that the district court states, in his final order, that Plaintiff was not the procuring cause of the sale. However, everything else in the district court's opinion suggests the contrary, and we cannot reconcile the district court's findings with the conclusion that Plaintiff was not the procuring cause. We can only assume that the district court used the term "procuring cause" synonymous with a requirement of continuous negotiations. When "a district court has failed to make a finding because of an erroneous view of the law ... remand is proper unless the record permits only one resolution of the factual issue." Pullman-Standard v. Swint, 456 U.S. 273, 291-2 (1982). Here, remand is unnecessary because our review of the district court's extensive findings compels us to conclude that Plaintiff was the procuring cause. See Nix v. WLCY

Radio/Rahall Communications, 738 F.2d 1181, 1187 (1984) (concluding that remand was unnecessary because the record compelled but one result). The only reason Plaintiff did not bring the sale to fruition is because Plaintiff was intentionally excluded.

Finally, we cannot find error with the district court's finding that Plaintiff was entitled to compensation under an unjust enrichment analysis. The elements of a cause of action for unjust enrichment are: (1) the Plaintiff has conferred a benefit on the Defendant; (2) the Defendant has knowledge of the benefit; (3) the Defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the Defendant to retain the benefit without paying fair value. Swindell v. Crowson, 712 So.2d 1162, 1163 (Fla. 2d DCA 1998); Greenfield v. Manor Care, Inc., 705 So.2d 926, 930 (Fla. 4th DCA 1997); Turner v. Fitzsimmons, 673 So.2d 532, 536 (Fla. 1st DCA 1996).

Here, the district court found that Plaintiff provided services of value to the Defendant. Plaintiff is the one who introduced the parties who consummated the sale. The Defendant learned from the Plaintiff that Root was a prospective purchaser with an interest in the Florida market. Plaintiff arranged for Root to tour the radio station and meet Defendant's shareholders, and Plaintiff continued to send Root financial information after the station tour. In essence, when Jernigan

10

approached Root in June of 1997, Root was already familiar with WMXZ because of the Plaintiff's efforts. The district court also found that the Defendant was well aware of the Plaintiff's efforts to sell the station to Root, and even encouraged these efforts by providing Plaintiff with updated financial data throughout 1996 to send to Root. Defendant knew that Plaintiff was still soliciting prospective buyers in the spring of 1997 and even executed a new agreement acknowledging the Plaintiff's representation of the Defendant in a proposed sale to Hochman. Thus, the Plaintiff and Defendant had developed a long-term relationship, commencing in November 1995 at the signing of an express contract and culminating in June 1997 with the offer by Root to buy WMXZ. In contacting Root directly, Defendant used its knowledge of Root, gained from the Plaintiff, and thus, accepted the benefit conferred upon it by the Plaintiff.

Plaintiff phoned Defendant early in the Defendant's negotiations with Root and demanded to participate on the basis that Plaintiff had introduced the parties. Rebuffed by the Defendant, Plaintiff sent a letter confirming its desire to participate in the negotiations.[9] Consequently, we are left with but one conclusion, and that is that Plaintiff was intentionally excluded.

---

[9] We make one final note that the record overwhelmingly supports these facts as found by the district court. In fact, the Defendant does not contest these facts.

III.    CONCLUSION

In conclusion, we find no reversible error with the district court's conclusion that it would be inequitable for the Defendant to retain the benefit of Plaintiff's services without compensation because Plaintiff provided services to the Defendant that made the sale of WMXZ possible.

AFFIRMED.