# Third District Court of Appeal

## State of Florida

Opinion filed May 22, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0833
Lower Tribunal No. 20-23546
_____


**Real Capital Partners, LLC,**
Appellant,

vs.

**Alhambra Center International, Ltd., et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Lisa S. Walsh and Alan Fine, Judges.

Brito, PLLC, and Alejandro Brito and Carlos Mouawad, for appellant.

Beighley, Myrick, Udell, Lynne & Zeichman P.A., and Maury L. Udell, for appellees.


Before LOGUE, C.J., and SCALES and GORDO, JJ.

SCALES, J.

Appellant Real Capital Partners, LLC ("Broker"), the plaintiff below, appeals a February 11, 2023 final summary judgment in favor of appellees Alhambra Center International, Ltd., Pan American Partners, Inc., and Pan American Group, Inc. (collectively, "Seller"), the defendants below, in this action to recover a brokerage commission alleged to be owed by Seller.[1] Concluding under our "new" summary judgment standard[2] that the trial court did not err in finding that Broker was not the procuring cause of the subject real estate sale transaction, we affirm the challenged judgment.[3]

## I. Relevant Background Facts

Between June 2018 and April 2020, Broker attempted to effectuate the sale of three of Seller's commercial buildings to multiple prospective purchasers. Broker did not list the buildings for sale on the Multiple Listing

---

[1] Appellees employed a complex corporate structure to effectuate ownership of the commercial properties that were sold. Because the corporate structure is not relevant to our resolution of this appeal, this opinion, for ease of reference, refers to appellees in the collective as "Seller."

[2] See In re Amendments to Fla. R. Civ. P. 1.510, 317 So. 3d 72 (Fla. 2021).

[3] Broker's operative second amended complaint sought to recover the commission from Seller under numerous legal theories, including breach of contract (count I), implied-in-fact contract (count II), promissory estoppel (count III), unjust enrichment (count IV), procuring cause (count V), and fraudulent or negligent misrepresentation (count VI). In this appeal, Broker appeals only the entry of final summary judgment on its claim for "procuring cause."

Service, nor did Broker have a listing agreement with Seller. Instead, Seller fielded occasional calls and emails from Broker about selling the buildings to a prospective buyer identified by Broker. On one such occasion, in June 2018, Broker and Seller entered into a brokerage agreement that authorized Broker to engage in negotiations with non-party Yakov Cohen, with Broker receiving a 1% commission on a potential $60 million sale of the buildings. Cohen and Seller never reached an agreement for the purchase and sale of the buildings.

On February 3, 2020, Broker submitted an offer from a new prospective buyer, George Scopetta, to purchase the subject properties for $50 million, with Broker proposing that Seller pay a 3% sales commission to Broker. This time, unlike the June 2018 dealings with Yakov Cohen, Broker and Seller did not have a brokerage agreement authorizing Broker to negotiate a sale of the properties to Scopetta. Nor did the parties' dealings reach a point where the parties formally discussed the sales price or Broker's commission. Instead, when, on February 5, 2020, Broker requested an in-person meeting to discuss Scopetta's offer, Seller's representative immediately notified Broker that the three buildings were no longer available "as a package" because one building was already under contract for sale

3

and Seller was negotiating the sale of the remaining two buildings to someone else.

After Broker informed Scopetta that his February 3, 2020 offer was rejected, Broker ceased dealing with Scopetta in favor of attempting to arrange a sale of the two properties that were not yet under contract to a different potential buyer, Ventas. The sale of the one building under contract ultimately fell through and the potential for a package deal of all three buildings was again a possibility. By that time, however, Scopetta – who had no commission agreement with Broker and who had ceased business relations with Broker – made to Seller an April 17, 2020 offer to purchase the subject properties through Scopetta's entities and through a different broker. Scopetta's entities purchased the subject properties from Seller, in June 2020, for $53.65 million and, pursuant to the purchase agreement between Seller and Scopetta's entities, Seller paid a sales commission to the new broker.

In October 2020, Broker filed the instant action in the Miami-Dade County circuit court seeking to recover a 1% sales commission from Seller alleging that Broker "was the real estate broker for the transaction and

4

procured a buyer for the Properties."[4] On February 11, 2023, the trial court entered final summary judgment in favor of Seller. After the trial court denied Broker's motion for rehearing, Broker timely appealed.

## II.     Analysis[5]

### A. Florida's "procuring cause" doctrine

A real estate broker is generally entitled to a sales commission when the broker is the "procuring cause" of the sale. Rotemi Realty, Inc. v. Act Realty Co., 911 So. 2d 1181, 1188-89 (Fla. 2005). "A typical instance wherein the applicability of the so-called 'procuring cause doctrine' may arise is where a broker calls a purchaser's attention to the property and starts the

---

[4] Broker alleged it was entitled to a 1% commission based on the June 2018 brokerage agreement that authorized Broker to engage in negotiations on Seller's behalf with non-party Yakov Cohen.

[5] "We conduct a de novo review of an order granting summary judgment." Am. Auto. Ins. Co. v. FDH Infrastructure Servs., LLC, 364 So. 3d 1082, 1083 (Fla. 3d DCA 2023). Whether a broker is the procuring cause of a real estate transaction generally presents questions of fact for the factfinder. See Osheroff v. Rauch Weaver Millsaps & Co., 882 So. 2d 503, 505 (Fla. 4th DCA 2004). Nonetheless, summary judgment may be entered where the record plainly demonstrates that the broker was not the procuring cause of the sale. See Stadler Com. Real Est. Servs., Inc. v. Indus. Waste Servs., Inc., 519 So. 2d 739, 740 (Fla. 3d DCA 1988); In re Amendments to Fla. R. Civ. P. 1.510, 309 So. 3d 192, 193 (Fla. 2020) ("If the evidence [presented by the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986))).

negotiation, but the sale is consummated by the vendor or through another broker or consummated upon different terms than those originally specified in the broker's contract of employment." 7 Fla. Jur. 2d Brokers § 88 (2024).

The procuring cause doctrine is an equitable concept that, barring a superseding contractual provision, generally applies to all brokerage agreements. See Esslinger-Wooten Maxwell, Inc. v. Lones Fam. Ltd. P'ship, 298 So. 3d 1176, 1181 (Fla. 3d DCA 2020). But even absent a formal brokerage agreement between a seller and a broker, the doctrine applies where the surrounding facts and circumstances establish the broker's pivotal role in the sale. See Nat'l Airlines, Inc. v. Oscar E. Dooly Assocs., 160 So. 2d 53, 54 (Fla. 3d DCA 1964) ("[T]here is authority that the absence of a direct employment does not always bar a broker from recovery. Where the broker is found to be the procuring cause of a sale, he may be entitled to a commission."); First Realty Corp. of Boca Raton v. Standard Steel Treating Co., 268 So. 2d 410, 411 (Fla. 4th DCA 1972) (applying the procuring cause doctrine in an action "seeking a commission from the seller on both implied contract and quantum meruit").

To earn a commission as the procuring cause of a sale, a broker must perform two tasks: "First, the broker must 'initiate[] negotiations by doing some affirmative act to bring buyer and seller together.' Second, the broker

6

must remain 'involved in the continuing negotiations between the seller and the buyer,' unless 'the seller and buyer intentionally exclude the broker from the negotiations.'" Rotemi Realty, Inc., 911 So. 2d at 1189 (quoting, respectively, Ehringer v. Brookfield & Assocs., 415 So. 2d 774, 775-76 (Fla. 5th DCA 1982) and Siegel v. Landquest, Inc., 761 So. 2d 415, 417 (Fla. 5th DCA 2000)). Even when it is the broker who first introduces the buyer to the seller, that broker will be deemed to have abandoned the transaction – and Florida's procuring cause doctrine will not apply – when the broker does not remain involved in the negotiations between the buyer and the seller. See Osheroff, 882 So. 2d at 505 ("If the broker abandons his attempts to bring the parties together and they later reach a deal on their own, the broker is not entitled to a commission.").

*B. The instant case*

In the challenged judgment, the trial court, without squarely addressing the first prong of the procuring cause doctrine, concluded that Broker failed to meet its summary judgment burden of establishing application of the second prong of the doctrine, i.e., Broker's involvement in continued negotiations between Scopetta and Seller:

> In the case at bar, Plaintiff has not and cannot demonstrate that it was the procuring cause of the sale. . . . Scopetta was made aware of the properties by multiple other brokers and there

7

were no ongoing negotiations between buyer and seller conducted by the Plaintiff.

Furthermore, Scopetta was informed by Plaintiff that his $50M [offer] was rejected, as was his request for an in-person meeting with the owner of the properties. No further negotiations as to the remaining properties was broached with either Scopetta or the seller. Instead, Plaintiff promoted another buyer – Ventas – for the purchase and sale of the remaining two properties which had not yet been sold. Further attempts to procure a sale off-market after February 5, 2020 for Defendants by Plaintiff did not include any representations or mention of Scopetta, but instead those efforts were for Ventas to buy the properties.

Moreover, there is nothing presented by Plaintiff to demonstrate that any reasonable juror could conclude that defendants *intentionally* excluded Plaintiff from the ultimate sale to Scopetta.

Plaintiff was not the broker who brought the seller and buyer together to effectuate a sale, and he did not further broker negotiations between the parties after February 5, 2020 until April 17, 2020 [when the new offer was made by Scopetta's entities through another broker]. The original [offer] was rejected for commercially legitimate reasons. The situation changed over the next couple of months and all three (3) buildings became available. Neither the sellers nor any of their representatives had any obligation to affirmatively reach out to Plaintiff and inform it that the deal had changed or that the possibility of buying all three buildings was now on the table. There is no evidence in the record to suggest Plaintiff was working on behalf of Scopetta or Defendants between February 6th and when another offer came in through another broker. Accordingly, Defendant's motion for summary judgment as to Count IV [sic] is granted.

(Citations omitted).

On our *de novo* review of the record, we conclude, under the particular

facts and circumstances of this case, that the trial court did not err in finding

8

that Broker was not the procuring cause of the June 2020 sale. We agree with the trial court that the summary judgment evidence established that, after Seller rejected Scopetta's February 3, 2020 offer, Broker plainly abandoned any efforts to sell the subject properties to Scopetta. See Richland Grove & Cattle Co. v. Easterling, 526 So. 2d 685, 687 (Fla. 1988) (recognizing that where a broker voluntarily abandons its efforts to sell the property, "the owner is at liberty to sell the property to any one [sic], including the purchaser first found by the broker, either by means of negotiations directly with the purchaser or through the medium of another broker" (quoting Parkey v. Lawrence, 284 S.W. 283, 287 (Tex. Civ. App. 1926))); Osheroff, 882 So. 2d at 505; Wilkins v. W.B. Tilton Real Est. & Ins., Inc., 257 So. 2d 573, 575 (Fla. 4th DCA 1971) ("[E]ven if we were to assume that the broker brought the parties together there is sufficient evidence in the record to reflect that the broker had abandoned his efforts in connection with the sale of the subject property to the buyer."); Nat'l Airlines, Inc., 160 So. 2d at 54-55 ("To be the procuring cause the broker must show that he called the potential purchaser's attention to the property *and it was through his efforts*

9

*the sale was consummated.*") (emphasis added).[6] We, therefore, affirm the challenged judgment.

      Affirmed.

---

[6] We note that the <u>Richland Grove</u> and <u>Wilkins</u> courts' abandonment determinations were grounded on the lack of communications between the brokers and sellers for an extended period of time; in both instances, the lack of communications was dispositive because the brokers had open-ended listing agreements with the sellers that did not provide a time period for the brokers to perform. <u>See</u> <u>Richland Grove</u>, 526 So. 2d at 687; <u>Wilkins</u>, 257 So. 2d at 575. Here, though, Broker and Seller had no listing agreement or brokerage agreement with respect to Scopetta. Our focus, therefore, is not on the length of time between Seller's rejection of Scopetta's February 3, 2020 offer through Broker and the April 17, 2020 offer by Scopetta's entities through a different broker, but on the facts and circumstances surrounding Broker's efforts to pursue a purchase of the subject properties by Scopetta. <u>See</u> <u>Sanson v. Dutcher, Higginbotham & Bass, Inc.</u>, 401 So. 2d 913, 915 (Fla. 4th DCA 1981) (affirming the trial court's abandonment determination under the procuring cause doctrine, noting that "[i]nvariably whether this doctrine applies to a particular case turns on the facts and circumstances in each particular instance").