**INDUSTRIAL WAXES, Inc., a corporation, Plaintiff-Appellee,**

v.

**Gerald Few BROWN, Defendant-Appellant.**

**No. 182, Docket 24836.**

United States Court of Appeals Second Circuit.

Argued March 3, 1958.

Decided July 31, 1958.

Lester C. Lockwood, Jr., New York City (Milton B. Ignatius and Joseph S. Catalano, New York City, on the brief), for plaintiff-appellee.

Daniel L. Stonebridge, New York City (Raymond W. Mitchell and Dow & Stonebridge, on the brief), for defendant-appellant.

Before LUMBARD, WATERMAN and MOORE, Circuit Judges.

MOORE, Circuit Judge.

This is an appeal by defendant Brown, a subject and resident of Great Britain, from a final judgment in a diversity action entered in favor of the plaintiff, an Ohio corporation, for $43,803 plus interest and costs.

The facts dispositive of the appeal are not in dispute. The plaintiff, Industrial Waxes, Inc., is engaged in exporting petroleum waxes to South America. These shipments are covered by marine insurance issued by a group of English underwriters, of which the defendant is a member, doing business under the name of Lloyd's.

In 1951 plaintiff made a contract to sell to Nacional De Velas, S. A. of Santiago, Chile 500 tons of semi-refined paraffin wax, $7.80 per 100 lbs., FAS New Orleans, CIF Valparaiso, documents at sight through the Bank of Chile. In fulfillment of this contract it undertook to effect five shipments of waxes from Tulsa, Oklahoma to Santiago via New Orleans, La. as port of exit and Valparaiso, Chile as port of entry. The first three shipments apparently arrived without incident. The final two shipments, having a combined declared value of $43,803, on about April 9, 1951 and June 13, 1951, respectively, were transported by steamer to Valparaiso, arriving there for reshipment inland on May 3, 1951 and July 6, 1951. Upon arrival each shipment was placed in the Customs' warehouse at the waterfront and remained in storage there awaiting the procurement by the purchaser of the requisite amount of United States dollars to meet the sight documents.

On October 5, 1951, more than five months after the arrival of the next to last shipment and three months after the final shipment, the waxes were still in the Customs' warehouse on the Valparaiso waterfront. The undisputed finding of the trial court was that "a delay of this length in a customs' warehouse pending entry was neither unusual nor unexpected and was long a matter of common knowledge to exporters to the West Coast of South America." On the evening of October 5, 1951 a fire ravaged the warehouse and destroyed the waxes.

To insure its merchandise plaintiff obtained from Lloyd's an annual open cover of insurance for its foreign shipments. The open cover set forth the voyages covered ("To, from and/or between places Anywhere in the World"), the types of merchandise covered, the applicable rates, and the general terms of the conditions of insurance. The rates relevant here are those applicable to general merchandise shipped under deck from the Gulf Coast, U. S. A. to the West Coast South America, Interior at .78625% of declared value and from the Gulf Coast to West Coast South America Ports at .68%. Of special significance is the warehouse extension clause which contains the following rate:

"Each thirty (30) days, or part thereof, in excess of the first thirty (30) days                    0.125%"

Attached to and made a part of the open cover is a series of printed clauses entitled "Institute Cargo Clauses (W. A.)." The actual insurance on specific shipments was obtained by the issuance of individual certificates of insurance under the open cover.

At the bottom of the printed page of Institute Cargo Clauses attached to the open cover the following caveat appears in bold type:

"Note—It is necessary for the assured to give prompt notice to Underwriters when they become aware of an event for which they are 'held covered' under this policy and the right to such cover is dependent on compliance with this obligation."

Clause 1 of the Institute Cargo Clauses is a warehouse to warehouse clause under which the insurance on a shipment would have expired thirty days after arrival at the port of discharge (Valparai-

so). However, the trial court found, and the appellant does not dispute the fact, that this clause was superseded by the warehouse to warehouse clause contained in the certificates of insurance.

Upon issuing the open cover Lloyd's agent at Montreal would furnish plaintiff with a pad of printed certificates of insurance. To insure a shipment, the plaintiff would fill out on a certificate the shipping data, the declared value, and any additional conditions authorized by the certificate, and attach it to the shipping documents, sending a duplicate to Lloyd's Montreal agent for billing purposes. Except for the shipping data, the two certificates involved here are identical.

The caveat "Note" contained in the open cover is repeated in bold face type at the bottom of each certificate. This warning is reinforced by Clause 6 of the Cargo Clauses which provides:

"This insurance shall in no case be deemed to extend to cover loss damage or expense proximately caused by delay or inherent vice or nature of the subject-matter insured."

The two clauses in the certificate, the interpretation of which is the crux of the appeal, are the warehouse to warehouse clause and the storage declaration clause. The warehouse to warehouse clause, Cargo Clause 1, reads as follows:

"This insurance attaches from the time the goods leave the warehouse at the place named in the policy for the commencement of the transit and continues until the goods are delivered to the final warehouse at the destination named in the policy or a substituted destination as provided in Clause 3 hereunder."

The storage declaration clause appearing on the face of the certificate provides:

"Including, if so declared hereon, risk whilst in store after arrival at port of discharge or in warehouse after arrival at final destination for 30 days thereafter held covered at an additional premium."

Immediately after the storage clause this following condition is stated:

"Including, if so declared hereon, risk whilst in warehouse awaiting shipment, at an additional premium for each 30 days subject to a limit of $500,000 any one location."

On the top of each certificate plaintiff typed the following declarations of coverage:

"Insure Customer Against All Risks To Customer's Warehouse Also Particular Average And Loss In Customs

"Includes Risk For Additional Thirty Days After Discharge From Vessel".

In the final analysis plaintiff's contention is that the necessary implication from the lack of an explicit limitation on storage coverage at port of discharge in the warehouse to warehouse clause is that such storage extends for an unlimited period of time. However, it should be noted at the outset that both the open cover and the certificates of insurance unmistakably reveal that the policy issued was one of insurance for transportation, i. e., covering goods in shipment. Therefore no such implication of unlimited storage should be made in the absence of convincing proof that the parties intended and the contract provided such coverage.

In search of such evidence plaintiff relies heavily on the rate differential between an inland and port shipment. The cost of insurance to Santiago being .78625% and the cost of insurance to Valparaiso only .68%, or .10625% less, plaintiff argues that if it had wished to insure the goods only to Valparaiso it would have declared at the .68% rate. To hold that the insurance expired at Valparaiso, the plaintiff concludes, would be to cheat it out of its bargained for and explicitly stated coverage from Valparaiso to Santiago for which it had paid the higher premium.

An analysis of the terms of the policy on which this argument is based exposes its fallacy. Assuming that the goods

had been destined only to Valparaiso and not for reshipment inland, at the time of the fire higher premiums than the ones plaintiff actually paid on these two shipments would have been required to cover the goods. Had Valparaiso been the final destination, insurance at the lower .68% rate would have expired thirty days after discharge. Thereafter, provided the assured gave prompt notice, the goods would have been held covered at the warehouse extension rate of .125% for each additional 30 days. Thus a total premium of .93% would have been required for coverage on the shipment in storage for three months (.68% + 2 × .125%), and a premium of 1.18% on the shipment in storage for five months (.68% + 4 × .125%). Yet plaintiff claims to be entitled to the same coverage at the .78625% premium rate.

The obvious reason for charging a slightly higher rate for inland shipments was that the goods would have to be off-loaded from an ocean vessel, placed upon a barge or pier, put in a warehouse, loaded onto a motor truck or railroad or combination of both, hauled inland to its destination, and then off-loaded from the carrier and delivered. It is axiomatic that the more frequently the goods are handled the greater will be the likelihood of damage or loss. To hold that the plaintiff for an extra .10625% received coverage not only for the additional handling which an inland shipment entailed, but also obtained coverage for months of storage in a warehouse at the port of discharge despite the fact that the charge for such warehouse extensions was an additional .125% per 30 days would be tantamount to excising the port rates from the open cover. Any exporter to a South American port conversant with the lengthy delays in customs would invariably declare at the inland rate thereby avoiding the warehouse extension charges and upon release of the goods from customs name the port as a substituted destination.

The terms of the insurance contract itself effectively refute the plaintiff's contention. The statement in Cargo Clause 6 printed on each certificate that loss caused by delay was not covered put the plaintiff on notice that the insurer was not furnishing it with an unlimited storage contract. The storage declaration clause in the certificate of insurance precisely delineates the scope of coverage in storage. Plaintiff argues that the phrase "Including, if so declared hereon, risk whilst in store after arrival at port of discharge * * * for 30 days thereafter held covered at an additional premium" should not be interpreted as limiting the coverage to 30 days. Any other interpretation, however, would render the clause meaningless surplusage. The phrase "for 30 days" modifies "in store after arrival at port of discharge" as well as "in warehouse after arrival at final destination." This construction is also strengthened by the fact that the concluding phrase in the clause, "thereafter held covered at an additional premium" modifies both port of discharge and final destination. The "thereafter" implies the expiration of some time limit and that time limit must be the 30 days specified in the clause.

Reading the storage declaration clause in conjunction with the warehouse to warehouse clause, the duration of coverage becomes apparent. Coverage does not attach until "the time the goods leave the warehouse" unless the assured declares otherwise, in which case the coverage attaches in the warehouse of origin at the warehouse extension rate. The coverage can in no event continue after "the goods are delivered to the final warehouse at the destination named" except that the assured can obtain an additional 30 days coverage at no cost if he so declares. While being transported the goods are continually covered, but they are not covered "whilst in store after arrival at port of discharge" unless the assured so declares and in that event are only covered under the certificate for 30 days after arrival. Thereafter they are held covered at the additional warehouse extension rate.

Plaintiff also suggests that it obtained storage coverage unlimited in time by

its having typed on the face of the certificates the instruction to "Insure Customer Against All Risks To Customer's Warehouse Also Particular Average And Loss In Customs." However, the insertion by plaintiff of the phrase "All Risks" defined the coverage but not the time limitations thereon. In fact, at the time it executed the certificates plaintiff's own understanding of the coverage belies the interpretation it urges here because immediately beneath the statement concerning "All Risks" the plaintiff typed the following terms on both certificates thus showing that it did not regard the coverage to be of unlimited duration:

"Includes Risk For Additional Thirty Days After Discharge From Vessel".

By the insertion of this clause the assured indicated that it wished to avail itself of the free coverage for 30 days storage after arrival at the port of discharge afforded by the storage declaration clause. To hold, as plaintiff now asserts, that its endorsement was meaningless and a nullity would be to ignore its own interpretation of the contracts at the time it executed the certificates.

Also, we think it of significance that the Bank of Chile interpreted the contracts as we believe the assured intended them to be interpreted. After arrival of the shipments the Bank of Chile held for collection the sight documents, to which the certificates were attached. Upon expiration of the 30 days after discharge at Valparaiso the Bank on behalf of the consignee obtained fire insurance on each shipment.

The assured had a wealth of experience in exporting to South America, and it could well expect delays of several months in clearing customs in Chile. Had it desired coverage for storage at Valparaiso for more than the 30 days provided in the certificates, it could have availed itself of this protection at the relatively small warehouse extension rate. Instead, notwithstanding the clear limitation contained in the storage declaration clause, the proviso in Cargo Clause 6 that loss proximately caused by delay was not covered and the warnings in both the open cover and certificates that the assured was required to give prompt notice of an event for which it was held covered, the plaintiff chose to remain silent while the goods stayed in storage for months. In so doing, the plaintiff avoided paying the premium required by the warehouse extension clause and thereby undertook to insure itself from the risks which such premiums would have covered. As such a self-insurer it cannot shift the loss.

The judgment is reversed and the complaint is dismissed.