[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 13, 2012
JOHN LEY
CLERK

No. 10-15152
_____

D.C. Docket No. 1:09-cv-20762-JAL


I.T.N. CONSOLIDATORS, INC.,
I.T.N. OF MIAMI, INC.,

                                                     Plaintiffs - Appellants,


versus


NORTHERN MARINE UNDERWRITERS LTD,
individually and as agents for Lloyds of London,
Watkins Syndicate (WTK/457),

                                                     Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 13, 2012)

Before TJOFLAT and MARTIN, Circuit Judges, and DAWSON,[*] District Judge.

PER CURIAM:

I.T.N. Consolidators, Inc. and I.T.N. of Miami, Inc. (collectively "ITN")

appeal the summary judgment the district court entered in favor of Northern

Marine Underwriters Ltd., individually and as agents for Lloyd's of London,

Watkins Syndicate (WTK/457) (collectively "Northern"), denying ITN's insurance

claims. We find that genuine issues of material fact exist and therefore VACATE

the summary judgment and REMAND the case for further proceedings.

## I.

## A.

ITN, freight forwarders, purchased an open cover policy (the "Policy") from

Northern for coverage of marine cargo for the period from August 16, 2007,

through August 14, 2008. The Policy Schedule provides in part:

> PERIOD: To cover all transits where risk commences on or after 16th
> August, 2007 for a period of twelve calendar months ending 14th
> August, 2008 both days inclusive[.]
>
> . . . .
>
> SUBJECT-MATTER INSURED: All goods and / or merchandise of
> every description incidental to the business of the Assured or in

---

[*] Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, sitting by designation.

connection therewith including duty if and as applicable. Duty sum insured should be separately shown and will be subject to conditions as per the Basis of Valuation Clause[.]

The Policy provided further still, in relevant part, as follows:

**Basis of Valuation**

It is agreed that the basis of valuation for the purpose of this Open Cover shall be the value declared for insurance, but in no case shall the valuation exceed CIF [i.e., Cost, Insurance, and Freight] + 30% unless prior written consent of the Insurer is given. In the event of declaration after loss or arrival, the basis of valuation will be CIF + 10% only.

. . . .

**Claims**

11    11.1 In order to recover under this Insurance the Assured must have an assurable interest in the subject-matter insured at the time of the loss.

11.2 Subject to 11.1 above, the Assured shall be entitled to recover for insured losses occurring during the period covered by this Insurance, notwithstanding that the loss occurred before the contract of insurance was concluded, unless the Assured were aware of the loss and Underwriters were not.

The declaration mentioned in the "Basis of Valuation" provision refers to the Certificate of Marine Cargo Insurance (the "COI"), which ITN issues—and thereupon pays a premium—for each shipment. The COI outlines the particular

3

risk of each shipment (e.g., cargo, value, destination)[1] and bears on its face the statement "WARRANTED: NO KNOWN OR REPORTED LOSSES."

B.

On or about October 22, 2007, ITN arranged for shipment of electronic goods belonging to Alfa Company, S.A. ("Alfa") from Miami, Florida, to Ciudad del Este, Paraguay. On the afternoon of November 7, 2007, the truck carrying the cargo traveling to the Paraguay border was hijacked, and the cargo was lost. Alfa's president learned of the loss on the evening of November 7, 2007, and reported the loss to ITN's Vice President, Fadi Aftimos, the following morning. Aftimos spoke with insurance broker Edward Tafur, who, as the district court found, reported the loss to Northern on November 8, 2007. That same day, ITN generated a COI[2] from Northern's website. The parties dispute whether Northern knew of the loss prior to the issuance of the COI; the court, however, found that all parties were aware of the loss when ITN generated the COI.

ITN submitted the COI to Northern, paid the designated premium, and submitted a claim for the loss. Northern denied coverage, so ITN brought this

---

[1] The open cover policy, in and of itself, does not mention the particularized risk of any given shipment.

[2] The COI described the date of shipment, its value, and the payee (Alfa), among other terms and conditions of insurance. The COI also contained the declaration "NO KNOWN OR REPORTED LOSSES at November 8, 2007."

4

lawsuit. At some point after this suit was brought, Northern tendered a refund of the premium to ITN. ITN refused to accept it.

The parties filed cross-motions for summary judgment. Northern argued that the COI was necessary to effect coverage under the Policy and that ITN's failure to issue a COI prior to the loss rendered the shipment uninsured. Northern also argued that it did <u>not</u> know about the loss before ITN issued the COI. Given this fact, Northern denied coverage on three grounds: (1) the Policy language did not cover the loss; (2) ITN breached the "No Known or Reported Losses" warranty; and (3) the <u>uberrimae fidei</u>[3] doctrine precluded coverage.[4] ITN, for its part, argued that the COI was irrelevant to the existence of insurance coverage on any shipment under the open cover policy. Essentially, ITN argued, based on the Basis of Valuation clause cited <u>supra</u>, that the policy contemplated post-loss COIs and, therefore, coverage, notwithstanding the statement of "NO KNOWN OR REPORTED LOSSES" on the COI. ITN argued the COI was not a condition for

---

[3] <u>Uberrimae fidei</u> refers to the requirement of "utmost good faith" called for in marine insurance policies, whereby an insured must fully and voluntarily disclose to the insurer all facts material to calculating an insurance risk. "A misrepresentation is material if 'it might have a bearing on the risk to be assumed by the insurer.'" <u>HIH Marine Servs., Inc. v. Fraser</u>, 211 F.3d 1359, 1363 (11th Cir. 2000) (quoting <u>Northfield Ins. Co. v. Barlow</u>, 983 F. Supp. 1376, 1380 (N.D. Fla. 1997)).

[4] These arguments are effectively three ways of saying the same thing: there is no coverage because the shipment was lost before the COI issued, and any COI that did issue notwithstanding the loss was a material misrepresentation that vitiated coverage.

5

coverage as the Policy provided inchoate coverage and that the issuance of the COI only operated to trigger valuation of the coverage and premium.

The district court found that no relevant material facts were in dispute and that the outcome of the case depended on insurance contract interpretation,[5] a question of law. See St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC, 572 F.3d 893, 897 (11th Cir. 2009). The court agreed with ITN that the Policy incorporated the COI neither expressly nor by reference. After discussing generally when coverage would attach in an open cover policy, the court concluded that the insurer's agreement to bear the risk would be "'inchoate

---

[5] Specifically, the district court stated:

Neither party disputes the existence of the Policy Wording, Policy Schedule, Special Projects Review, [Northern's] website or the Certificate. Similarly, the Parties do not dispute that the Certificate was issued by ITN on November 8, 2007, after it knew of the loss of the shipment. Consequently, the first question this Court must answer is whether the Certificate was part of the Policy and a declaration of value was necessary for coverage to exist.

Should the Court answer the first question in the negative, the second issue the Court must decide is whether ITN's method of overland shipment from Santos, Brazil[,] to Ciudad de Este, Paraguay, violated the convoy condition of the Special Projects Review and thus voided coverage. Again, the Parties do not dispute the facts regarding the shipment and its subsequent hijacking. Without any remaining material questions of fact, both dispositive issues in the Parties' cross-motions for summary judgment are ripe for the Court's determination as matters of law.

I.T.N. Consolidators, Inc. v. N. Marine Underwriters Ltd., No. 09-20762-CIV-LENARD/GARBER, slip op. at 10–11 (S.D. Fla. Mar. 25, 2010) (footnote omitted).

6

and incomplete' until a declaration was made by the assured." I.T.N.

Consolidators, Inc. v. N. Marine Underwriters Ltd., No.

09-20762-CIV-LENARD/GARBER, slip op. at 16 (S.D. Fla. Mar. 25, 2010)

(quoting Orient Mut. Ins. Co. v. Wright, 64 U.S. (23 How.) 401, 406, 16 L. Ed.

524 (1860)). Nevertheless, the court found that ITN's interpretation of the Policy,

in which a COI could issue and trigger coverage after a loss, would undermine the

notion of risk upon which the insurance industry is based, as well as the principle

of uberrimae fidei. The court reasoned that under ITN's reading of the open cover

policy, ITN would be able to forgo the issuance of COIs and the payment of

premiums for shipments that arrived safely but at the same time be permitted to

issue COIs, pay the premium, and collect compensation for shipments when they

were lost. The court found, "With the subject of insurance no longer in existence

and the loss known to both parties, ITN's subsequently-issued Certificate was

without consideration and void. Thus, at the time of the hijacking, ITN's shipment

was not declared to [Northern], and, therefore, was not insured by the Policy."

I.T.N. Consolidators, slip op. at 19 (citations omitted). Northern was accordingly

entitled to summary judgment.[6]

---

[6] The district court did not reach the issue relating to the convoy condition, stating, "Having found that no coverage attached to ITN's hijacked cargo at the time of its loss, the question of whether the convoy condition was satisfied is rendered moot and the Court declines

7

II.

The district court was correct in stating that the particular shipment at issue in this case was "not insured <u>by the Policy</u>." <u>I.T.N. Consolidators, Inc. v. N. Marine Underwriters Ltd.</u>, No. 09-20762-CIV-LENARD/GARBER, slip op. at 19 (S.D. Fla. Mar. 25, 2010) (emphasis added). The court erred, however, when it concluded that no coverage attached to ITN's cargo at the time of its loss because a COI could not issue after a loss. In short, the court failed to consider whether Northern and ITN had nevertheless contracted, outside the Policy's conditions for automatic coverage, to insure a mutually known loss.

The district court's conclusion conflicts with the Policy's plain language. To illustrate this, we consider the mechanics of how a shipment comes to be insured under ITN's open cover policy.

A.

In general, an open cover policy is a contract that sets out the terms that will govern future contracts; i.e., it is "merely a contract for insurance[,] and each time the underwriter agrees to accept a risk, a contract of insurance is formed in relation to that particular risk." Baris Soyer, <u>Warranties in Marine Insurance</u>, ch. 5.43, at 150–51 (2d ed. 2006); <u>see also</u> <u>Greene v. Cheetham</u>, 293 F.2d 933, 935 (2d Cir.

---

to address it." <u>I.T.N. Consolidators</u>, slip op. at 19.

1961) ("[In a] typical open-cover polic[y] . . . . [t]he assured binds the insurer by issuing a certificate of insurance for each specific shipment and inserting therein the valuation of the shipment, the name of the vessel, and the route for which coverage is to be had."). An open cover policy, therefore, "is a prospective policy which requires notice from the insured to the insurer of the particulars concerning each shipment to be made so that they can be entered on the policy which is 'open to receive them,' and so that the premium can be fixed." 5 Saul Sorkin, <u>Goods in Transit</u> § 42.08[1] (footnote omitted) (quotations omitted).

By initiating the exchange of a premium for a promise to insure a shipment, the COI thus itself reflects the insurance contract as to any <u>particular</u> shipment, as Northern illustrated in its motion for summary judgment:

> The [COI] subsequently written constitutes the contract or policy of insurance. The [COI] also contains the terms and conditions of coverage and incorporates into it all the terms and conditions of the insurance policy[.] . . .
>
> The open cover set[s] forth the voyages covered . . . , the types of merchandise covered, the applicable rates, and the general terms of the conditions of insurance.
>
> . . . .
>
> The actual insurance on specific shipments was obtained by the issuance of individual certificates under the open cover.

Def.'s Mot. for Summ. J. 5–6 (quoting <u>Indus. Waxes, Inc. v. Brown</u>, 258 F.2d 800,

9

801 (2d Cir. 1958)) (internal quotation marks omitted) (emphasis omitted).[7]

The plain terms of ITN's open cover policy, however, seem to require that the loss of a shipment be unknown when the COI is issued and the premium accepted in order for coverage to attach under any given COI. Per the "Claims" provision of ITN's policy, "[ITN] must have an assurable interest in the subject-matter insured at the time of the loss" to recover under the Policy. That provision also says, however, that "[ITN] shall be entitled to recover for insured losses occurring during the period covered by this Insurance, notwithstanding that the loss occurred before the contract of insurance was concluded, unless [ITN] were

---

[7] ITN argued to the district court and to this court that the COI is separate from the Policy in the sense that the COI has no bearing on whether a particular shipment is insured. See Pls.' Mem. of Law in Opposition to Defs.' Mot. for Summ. J. & in Support of Pls.' Mot. for Summ. J. 9–10; Appellants' Br. 27–28. The cases it cites for this proposition are entirely inapposite; each one deals with a "certificate" issued by an insurer as proof of insurance where the insured was required to furnish such proof to a third party. See U.S. Pipe & Foundry Co. v. U.S. Fid. & Guar. Co., 505 F.2d 88, 89 (5th Cir. 1974) (certificate furnished by insurer to lessor as proof that lessee had procured liability insurance); Boseman v. Conn. Gen. Life. Ins. Co., 301 U.S. 196, 200, 57 S. Ct. 686, 688, 81 L. Ed. 1036 (1937) (employee furnished with certificate informing him of insurance to which he was entitled under group policy obtained through employer's negotiation); Lezak & Levy Wholesale Meats, Inc. v. Ill. Emp'rs Ins. Co. of Wausau, 460 N.E.2d 475, 476–77 (Ill. App. Ct. 1984) (insurer's certificate provided to bailor showing bailee's insurance coverage); Postlewait Constr., Inc. v. Great Am. Ins. Cos., 720 P.2d 805, 806 (Wash. 1986) (insurer issued two certificates to crane lessor informing lessor that lessee had obtained insurance); Tribeca Broadway Assocs. v. Mount Vernon Fire Ins. Co., 774 N.Y.S.2d 11, 12 (N.Y. App. Div. 2004) (property owner required contractor to carry liability insurance; contractor furnished property owner with certificate to that effect). Not one of the cases discusses an open cover policy, let alone a marine open cover policy. ITN's rationale (which we reject) for why Industrial Waxes, Inc. v. Brown, 258 F.2d 800 (2d Cir. 1958), does not reflect the relationship between the COI and a marine open cover insurance policy is that it is "more than 50 years old [and] from another circuit." Pls.' Mem. of Law in Opposition to Defs.' Mot. for Summ. J. & in Support of Pls.' Mot. for Summ. J. 9 n.4.

10

aware of the loss and Underwriters were not."[8]  In such a case, the lost—but

nevertheless insured—shipment would be valued at CIF + 10%, rather than up to

CIF + 30%, pursuant to the policy's valuation clause.

So if a shipment were lost before a COI issued, automatic coverage under

the policy would be possible—it would simply depend on whether ITN knew

about the loss before it issued the COI for the shipment.  This requirement is

consistent with the policy's reduced compensation level where a loss occurs

before a COI issues; all a shipper needs do to avoid this reduction is issue a COI

when the shipment departs for its destination.  But the open cover policy leaves

the door open for an alternate practice of issuing COIs on some regular basis,

without regard to the specific timing of any one shipment.[9]  All that is required is

---

[8]  The "contract of insurance" mentioned in this provision refers to the exchange of a premium based on the risk of loss associated with a particular shipment—as calculated from the shipper's COI—and the promise to insure.  See, e.g., Indus. Waxes, Inc. v. Brown, 160 F. Supp. 230, 232, 235 (S.D.N.Y. 1957) ("The procedure followed was that [Insurer] furnished [Insured] with a number of forms of Lloyd's Certificates of Insurance whereon [Insured] declared each shipment to be insured, the commodity shipped, its value, port of exit, destination and course of voyage.  When so declared and signed by [Insured], the original of the declaration would go forward with the shipping documents and a copy would be sent to [Insurer] who would in turn bill [Insured] at rates scheduled in the open cover and collect the premium due. . . .  The open cover was a contract to insure and it set forth (save where modified or extended by the subsequent certificate) the terms and conditions under which the insurance would attach to shipments; the certificate of insurance subsequently written constitutes the contract or policy of insurance."), rev'd on other grounds, 258 F.2d 800 (2d Cir. 1958).

[9]  For example, ITN claims that it was the marine-insurance industry's historical practice for shippers to issue batches of COIs on a monthly basis.  See Appellants' Br. 1–2.

11

that the shipper not <u>know</u> about a loss before any <u>particular</u> COI is issued. Else, the insurer is not required to automatically insure the lost shipment. It is thus logical that the COI would bear a warranty on its face that no known loss had occurred at the time of its issuance. That warranty does not contradict any part of the open cover policy, but rather serves to bring the shipment under the automatic coverage of the policy.

To summarize, based on the Policy's "Claims" provisions, and with specific terms that provide for different valuations for lost and arrived shipments, the plain language of the Policy provides that a COI could issue and coverage could attach after a loss. The district court's holding to the contrary was in error. Our determination that the holding was erroneous, however, does not fully resolve this appeal.

B.

The loss here occurred before the COI issued; by reference to the "Claims" provisions in the Policy, there was thus no "insured loss[]" at the time ITN generated its COI. <u>Both</u> ITN and Northern knew about the loss before the COI issued—and, therefore, "before the contract of insurance was concluded." As a result, the "Claims" provision's exception allowing for insurance after a loss does not apply. This is thus not a case contemplated by the exception and by the no-

12

known-loss warranty on the COI, whereby a COI is issued for a shipment not known to be lost and coverage attaches—per the Policy's Claims clause—"notwithstanding that the loss occurred before the contract of insurance was concluded."[10] Because all parties knew of the loss here, a misrepresentation that no known loss had occurred could not have led Northern to rely on that statement, and would in no way constitute a material misrepresentation in breach of uberrimae fidei. But even with this forthright exchange of information, the plain terms of the policy indicate that Northern was not required to insure this loss.

That coverage did not automatically arise for this lost shipment is not to say that Northern could not have voluntarily contracted to insure the lost shipment. Northern, knowing of the loss, could have nonetheless billed ITN the premium called for by the COI as if no loss had occurred. The consideration exchanged might have been, for instance, the furtherance of Northern's relationship with ITN,

---

[10] The phrase in the exception "unless the Assured were aware of the loss and Underwriters were not" should not be read to say that coverage is denied only if ITN knew of a loss and did not tell Northern about that loss before clicking "print" on a new COI. The exception merely states that there can be coverage if (1) a "contract of insurance"—i.e., a COI and a premium exchanged for a promise to insure—commences, (2) a loss occurs, (3) ITN notifies Northern of the loss, and (4) Northern nonetheless accepts the premium for the shipment and insures it under the Policy, effectively "conclud[ing]" the "contract of insurance." Under such circumstances, there is inevitably some point in time when an "Assured [is] aware of [a] loss and Underwriters [are] not"; the clause says nothing of the exchange of knowledge about a loss as related to the timing of a COI's issuance. The mechanics of the exception thus simply allow the possibility of issuing a COI after an unknown loss has occurred.

13

or the encouragement of the practice ITN claims it followed: the invariable payment of premiums on every shipment. The question, then, becomes whether ITN and Northern contracted to insure the lost shipment.

C.

In sum, the issue in this case is thus not whether the COI conflicts with the terms of the open cover policy. Notwithstanding the mechanism for automatic coverage for a not-lost shipment under the open cover policy, it is entirely possible for Northern to insure a shipment that was lost before the COI issued—provided that both Northern and ITN knew about the loss before hand. ITN would inform Northern of the loss, then issue the COI and submit it along with the premium. If Northern wanted to insure the shipment, it would, at this point, accept the contract formed by the COI by keeping the premium payment. To be clear, Northern was not bound by the open cover policy to accept the risk because the contract would be <u>nudum pactum</u> if solely to insure an already-lost shipment.[11] The post-loss COI—and the retention of the premium paid on it—would reflect instead a

---

[11] See, e.g., St. Paul Fire & Marine Ins. Co. v. Pure Oil Co., 63 F.2d 771, 772–73 (2d Cir. 1933) ("[T]he [COI]s were issued after the losses were known to both parties, and a claim had been made, and thus at a time when they could not affect the parties' rights except as an accord, to which the later payment might be a satisfaction. . . . They may indeed have been intended as a declaration or even a promise that the loss would be treated as 'valued,' but as promises they were without consideration, the loss being already known. They were nudum pactum." (citations omitted)).

14

voluntary contractual agreement. Considering that both parties knew of the loss

before the COI issued, any purported misrepresentation that no loss had

occurred—and therefore any uberrimae fidei argument—would be irrelevant to the

contract formation.[12]

---

[12] The gist of Northern's uberrimae fidei argument is as follows:

> Because federal maritime law is well-established with respect to an insured's duty to make a full and complete disclosure on a marine insurance application, the Court must use federal maritime law to resolve an underwriter's claim that an insured's material misrepresentation voids the insurance contract.
>
> Uberrimae fidei requires parties to a maritime insurance contract to deal in utmost good faith. The insurance applicant must voluntarily and accurately disclose to the insurance company all facts which might have a bearing on the insurer's decision to accept or reject the risk.
>
> . . . .
>
> Thus, applying uberrimae fidei, a misrepresentation on the insurance application at issue, if material, would void the contract. Here, Plaintiff is seeking to obtain insurance after it knew of the loss. This attempt defies public policy and the law of insurance.

Appellees' Br. 21–23 (footnote omitted) (citing Certain Underwriters at Lloyd's, London v. Giroire, 27 F. Supp. 2d 1306, 1311–12 (S.D. Fla. 1998); Northfield Ins. Co. v. Barlow, 983 F. Supp. 1376, 1379–80 (N.D. Fla. 1997)) (internal quotation marks omitted). This uberrimae fidei argument is, in effect, simply a misrepresentation argument. There could have been no material misrepresentation in this case based on the district court's finding that Northern knew about the loss before the COI issued.

The district court indicated that there is another potential uberrimae fidei defense to coverage here: ITN allegedly insured its shipments selectively by, for example, not issuing post-shipment COIs—and therefore not paying premiums—on shipments that had already arrived or that appeared low-risk. Northern does not raise this argument; it is ITN that argues the good-faith practice of insuring every shipment creates the uberrimae fidei basis for insuring shipments that are lost before the COI issues. Assuming that failure to conform to this practice presents Northern an uberrimae fidei defense, we are unpersuaded that ITN's practices were relevant to

15

Insurance coverage in this case, then, turns on whether Northern in fact agreed to insure the lost shipment. That question in turn depends on whether Northern accepted ITN's premium payment, thereby consummating the contract to insure the lost shipment. ITN claims it paid the premium at the time the COI issued, and that Northern initially kept the payment for some time. Apparently, Northern attempted to return the premium to ITN at some point after this litigation had commenced. Therefore, in addition to resolving the convoy-requirement issue it declined to address, the district court should determine whether Northern in fact accepted ITN's premium payment such that a contract to insure the lost shipment was formed.[13]

## III.

For the foregoing reasons, the district court's summary judgment is VACATED and the case is REMANDED for proceedings consistent with this

---

this shipment. A shipper's practice of insuring every shipment regardless of risk might be relevant to coverage for a shipment that was lost and for which the insured then issued a COI before learning of that loss. But where, as is the case here, both parties knew of the loss before the insured could issue the COI, the fact that the insured would have issued a COI in its typical course of business seems irrelevant to the issue of coverage. That is, the open cover policy itself bars coverage for a lost shipment unless the loss is unknown when the COI issues.

[13] To be clear, in so determining whether a contract was formed, the district court will necessarily determine whether there was consideration—such as that mentioned in part II.B, supra—underlying the agreement to insure the lost shipment, and therefore whether the premium—if it was accepted—backed a contract rather than simply an unenforceable promise to insure.

opinion.

SO ORDERED.