[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14439
_____

D.C. Docket No. 1:09-cv-20762-JAL


I.T.N. CONSOLIDATORS, INC.,
I.T.N. OF MIAMI, INC.,

                                        Plaintiffs - Appellees,

versus

NORTHERN MARINE UNDERWRITERS LTD.,
individually and as agents for Lloyds of London,
Watkins Syndicate (WTK/457),

                                        Defendant - Appellant.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(June 28, 2017)

Before MARCUS and BLACK, Circuit Judges, and COHEN,[*] District Judge.

PER CURIAM:

This insurance coverage dispute is back before us for the second time. Northern Marine Underwriters Ltd. ("Northern Marine") appeals the entry of summary judgment in favor of I.T.N. Consolidators, Inc. and I.T.N. Miami, Inc. ("ITN"). ITN is a freight forwarding company that insured its shipments through an open cover policy (the "Policy") issued by Northern Marine. Under the Policy, ITN could insure as many -- or as few -- cargo shipments as it chose. In November 2007, ITN learned that it had failed to obtain coverage for a shipment that was hijacked. It subsequently filed a standard form in an attempt to obtain coverage for the shipment and filed a claim for the loss. Northern Marine denied the claim, ITN filed suit, and the district court granted summary judgment in favor of Northern Marine.

On initial review, a prior panel of this Court held that the Policy did not cover known losses. It nonetheless remanded for the district court to determine whether the parties might have entered into a new contract whereby Northern Marine agreed to cover the known loss in exchange for some additional consideration. On remand, the district court erred in reading the mandate to

---

[*] Honorable Mark H. Cohen, United States District Judge for the Northern District of Georgia, sitting by designation.

2

preclude consideration of Northern Marine's argument that any new agreement would have been void as a matter of public policy because that argument was based on intervening case law -- a well-established exception to the mandate rule. Having the benefit of oral argument, we now reverse and remand for entry of final summary judgment in favor of Northern Marine.

## I.

The essential facts are these. ITN is a freight forwarding company involved in cargo transportation. Northern Marine was its insurer. Under the terms of the Policy, when ITN wanted to insure a particular shipment it would enter information relevant to the shipment (cargo, value, route, etc.) into a form on Northern Marine's website. Based on this information, a premium would be automatically calculated and a Certificate of Insurance ("COI") would be generated.

On November 7, 2007, hijackers intercepted and stole an ITN shipment on its way from Miami to Ciudad del Este, Paraguay. After learning that the shipment had been stolen, ITN reviewed its records and realized that it had failed to obtain a COI for the shipment. ITN proceeded to use the online form to issue itself a COI and remit payment of the premium to the broker who handled billing for Northern Marine. The broker later remitted these funds to Northern Marine, which received

the funds on February 12, 2008.  Northern Marine denied the claim on February 15, 2008.

ITN filed suit asserting Northern Marine's denial was a breach of the insurance contract and seeking a declaratory judgment that the Policy covered the loss.  Instead, the district court granted summary judgment in favor of Northern Marine, holding that the policy did not cover the loss because the COI was issued after ITN knew the loss had occurred.

On appeal, this Court affirmed the district court's conclusion that ITN's claim was not insured under the Policy.  I.T.N. Consolidators, Inc. v. Northern Marine Underwriters Ltd., 464 F. App'x 788, 791 (11th Cir. 2012).  The panel nonetheless vacated the entry of summary judgment and remanded to the district court to determine "whether Northern [Marine] in fact agreed to insure the lost shipment" by accepting the premium after it knew that the loss had occurred, and thus "whether a contract was formed."  Id. at 795 & n.13.  The panel offered that consideration for this new contract "might have been, for instance, the furtherance of Northern [Marine]'s relationship with ITN, or the encouragement of the practice ITN claims it followed: the invariable payment of premiums on every shipment."  Id. at 794.  After that remand, the Florida First District Court of Appeals decided Interstate Fire & Cas. Co. v. Abernathy, 93 So. 3d 352 (Fla. 1st Dist. Ct. App.

4

2012), and held that contracts to insure known losses are unenforceable as a matter of Florida public policy.

On remand, the district court granted summary judgment in favor of ITN. It refused to consider Northern Marine's argument that the contract was unenforceable as against public policy under Interstate, holding that this argument was outside the scope of the mandate handed down by this Court. The district court found that ITN's payment of a premium, occurring as it did after it learned of the hijacking, constituted an offer to enter into a new insurance contract that covered the known loss, which Northern Marine accepted by retaining the premium. The district court then found that there was consideration because the undisputed facts showed that ITN had continued to do business with Northern Marine after the claim.

Northern Marine now appeals the district court's entry of summary judgment, arguing in relevant part that the district court erred in failing to consider its argument that the hypothetical new contract was void as against public policy, and that if it had considered this argument, the district court would necessarily have entered summary judgment in Northern Marine's favor. ITN defends the district court's judgment on its terms, but cross-appeals the district court's denial of its request for prejudgment interest.

5

## II.

We review de novo the question of whether a district court properly construed the mandate from this Court. See Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp., 943 F.2d 1511, 1517 (11th Cir. 1991).

"We review a district court's grant of summary judgment de novo, viewing all of the facts in the record in the light most favorable to the non-movant." Haynes v. McCalla Raymer, LLC, 793 F.3d 1246, 1249 (11th Cir. 2015) (internal quotations omitted). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under the mandate rule, district courts must carry out any specific mandate issued by the appellate court. Litman v. Mass. Mut. Life Ins. Co., 825 F.2d 1506, 1511 (11th Cir. 1987) (en banc). When an appellate court "remands for resolution of a narrow factual issue, the lower court may not circumvent the mandate by approaching the identical legal issue under an entirely new theory." Barber v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, & Helpers, Dist. Lodge No. 57, 841 F.2d 1067, 1070 (11th Cir. 1988) (quotation omitted); see also Ellard v. Ala. Bd. of Pardons & Paroles, 928 F.2d 378, 381–82 (11th Cir. 1991). This doctrine ensures obedience from the lower courts and helps bring an end to litigation by foreclosing infinite redress of settled issues. United States v.

6

Williams, 728 F.2d 1402, 1406 (11th Cir. 1984).  But, the mandate rule is not absolute.  It does not apply when "an intervening change in the controlling law dictates a different result."  Piambino v. Bailey, 757 F.2d 1112, 1120 (11th Cir. 1985).

Here, Northern Marine argued that, based on Interstate Fire & Cas. Co. v. Abernathy, 93 So. 3d 352 (Fla. 1st Dist. Ct. App. 2012), a contract to insure a known loss is void as a matter of public policy.  Interstate was decided after the mandate issued in this case.  Given ITN's contention that the new contract arose after the loss was known to both parties,[1] the district court was required to at least consider whether Interstate reflected a change in controlling Florida law so that it fell within the exception to the mandate rule and thus rendered the new contract unenforceable.  It was error for the district court to reject Northern Marine's argument out of hand.

Because the record is clear, we will address whether Interstate renders any new contract unenforceable rather than remanding for a whole new round of district court proceedings.  For purposes of this determination, we review all of the evidence in the light most favorable to ITN.  See Chapman, 229 F.3d at 1023.

The dispute in Interstate arose out of a policy insurance company Interstate issued to Emerald Coast, an entertainment company whose business included

---

[1] Northern disputes that it knew of the loss.

7

leasing out inflatable recreational gear for local events. 93 So. 3d at 354–55. The policy also covered unnamed additional insureds with respect to liability arising out of Emerald Coast's ongoing operations, provided that the additional insured's coverage was "required by written contract." Id. at 355. On April 14, 2007, 14-year-old Dakota Abernathy was injured on an inflatable bungee run provided by Emerald Coast at a festival hosted by the Choctaw Touchdown Club ("the Club"). Id. at 354–55. The Club did not have liability insurance or a written contract with Emerald Coast at the time of the accident. Id. at 355. Nonetheless, four days after the accident, the insurance broker issued a certificate of insurance naming the Club as an additional insured, backdated to the date of the accident. Id. at 355 & n.4. In the litigation that ensued, the trial court denied the defendant's motion for summary judgment and entered judgment in favor of the plaintiff, holding that the parties had formed a contract to insure the known loss and that such a contract was not forbidden. Id. at 356–57.

On appeal, the Florida First District Court of Appeal reversed. Id. at 360. The appellate court began its discussion by describing the concept of insurance and how it is defined under Florida law. Id. at 358. It emphasized that insurance necessarily involves contingencies so that payment for a non-contingent loss is contrary to the very idea of insurance. Id. The court then surveyed Florida laws regulating insurers and insurance markets. It noted that Florida law requires

8

insurers to maintain reserves and surpluses.  Id. (citing Fla. Stat. §§ 624.404, 624.408).  The court also pointed out that the Florida legislature had enacted substantive protections to "avoid financial loss to claimants or policyholders because of the insolvency of an insurer."  Id. at 359 (quoting Fla. Stat. § 631.51(1)).  These protections included the creation of the Florida Insurance Guaranty Association (FIGA), to handle the claims of insolvent insurers.  Id.; see also Fla. Stat. 631.50, et seq. (establishing the powers and duties of FIGA).

From these and other provisions, the court divined a general public policy interest in protecting the public from insolvent insurers.  Id. at 358–59.  It reasoned that the rule against contracts to insure a known loss is "part and parcel" of that policy, because such agreements risk the solvency of the insurer.  Id.  The court explained:

> This basic doctrine does not arise from a desire to protect an individual insurance company from something akin to fraud, . . . but from a recognition that the insured's risk is, in a real sense, borne by the insurer's policyholders as a group, from whose pool of premiums all claims must be paid if the insurer is to remain in business.  In other words, because society as a whole relies on insurance, public policy will not permit a transaction that is anathema to the very concept of insurance which, if allowed in the aggregate, could put insurance at risk for all.

Id. at 359 (quoting Nourachi v. First Am. Title Ins. Co., 44 So. 3d 602, 610 (Fla. 5th Dist. Ct. App. 2010) (Lawson, J., concurring)) (quotations omitted).

Because the rule was not founded on fraud protection, the court rejected the

plaintiff's contention that the contract was enforceable so long as the insurer also knew about the loss.  Id.

Applying Interstate to our facts, the new contract hypothesized by the prior panel would be unenforceable because it would be an agreement to insure a known loss.  Interstate squarely forbids enforcement of such an agreement.

When questioned at oral argument ITN argued that Interstate was distinguishable.  Counsel argued that Interstate forbids coverage only under the original insurance contract; it has nothing to say about a new contract.  This argument finds no support in the Interstate opinion.  Just like in Interstate, ITN claims that the COI is the new contract.  Both the Interstate contract and the new contract in this case would require the insurer to pay for a known loss.  On these facts, Interstate is not distinguishable.

ITN also argued in district court -- but not in its briefing on appeal -- that Florida law is unsettled on this issue.  It pointed to the majority opinions in Nourachi, 44 So. 3d at 608, and National Life Ins. Co. v. Harriott, 268 So. 2d 397, 400 (Fla. 2d Dist. Ct. App. 1972), both of which held that an agreement to insure a loss known to the insured is unenforceable where the insured does not disclose the loss to the insurer.  But these cases do not conflict with Interstate.  Neither case held that an agreement to insure a known loss is enforceable if the insurer does know about the loss, because that issue was never presented.  Indeed, Interstate

10

itself is based on a concurring opinion from Nourachi.  In Nourachi, the majority held that the agreement to insure a known loss was unenforceable where the fact was not disclosed to the insurer.  Id. at 608.  The concurrence would have gone further and held that a contract to insure a known loss is never enforceable, even if the insurer had known.  Id. at 610.  Nothing about either the majority or concurring opinion suggests that those rules are in conflict.

Interstate is on all fours with the case before us.  Because agreements to insure a known loss are void as a matter of public policy in Florida, any hypothetical agreement to insure the hijacked shipment after it was known to be lost is unenforceable.  In the absence of a holding on point from the Florida Supreme Court, "we are bound by the decisions of intermediate state courts unless there is some persuasive indication that the state's highest court would decide the issue differently."  Media Servs. Grp., Inc. v. Bay Cities Commc'ns, Inc., 237 F.3d 1326, 1329 n.5 (11th Cir. 2001).  We are aware of no indication that the Florida Supreme Court would reject Interstate, and ITN has pointed us to none.  Accordingly, we must apply Interstate, and Northern Marine is entitled to summary judgment.

The district court erred when it construed the mandate to preclude arguments based on intervening case law.  Considering these arguments, we conclude that any new contract would be unenforceable as a matter of Florida public policy.  The

11

failure of this new contract theory eliminates the last remaining basis for recovery by ITN.  Therefore, we reverse and remand to the district court with instructions to enter final summary judgment in favor of Northern Marine.

**REVERSED AND REMANDED.**